Archie GLASGOW, Plaintiff–Appellant,

v.

UNITED STATES DRUG ENFORCE-MENT ADMINISTRATION, Larry Fox, Special Agent Timothy Brunholtz, Defendants–Appellees.

No. 92–3602.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1993.

Decided Dec. 28, 1993.

---

E.E. Edwards, Nashville, TN, argued, for plaintiff-appellant.

John James Ware, St. Louis, MO, argued, for defendants-appellees.

Before WOLLMAN, LOKEN, Circuit Judges, and HUNTER,* Senior District Judge.

LOKEN, Circuit Judge.

On November 23, 1988, Archie Glasgow flew from Indianapolis to visit his wife's family in Albuquerque. While awaiting a connecting flight in St. Louis, he was stopped by Drug Enforcement Administration agents Larry Fox and Timothy Brunholtz. The agents seized $66,700 in cash from his briefcase. Four months later, despite Glasgow's numerous attempts to recover his money, DEA declared the $66,700 forfeited under 21 U.S.C. § 881. Glasgow commenced this action against DEA and the agents, claiming violations of his Fourth Amendment and due process rights. The district court granted summary judgment for all the defendants, concluding that Glasgow's claims were barred because he had adequate notice of the administrative forfeiture proceeding yet did not file a timely claim with the agency. Glasgow appeals. We reverse and remand.

---

* The HONORABLE ELMO B. HUNTER, Senior District Judge for the Western District of Mis-

I.

In reviewing the district court's grant of summary judgment, we view the facts most favorably to Glasgow. *See Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993).

Glasgow began his trip with $17,000 cash; jewelry sales and a successful poker game provided him with $66,700 for the trip home. At the Indianapolis airport, security personnel observed the cash in Glasgow's briefcase and informed a local police officer. Without talking to Glasgow, the officer alerted agents Fox and Brunholtz in St. Louis. When Glasgow arrived in St. Louis, agents Fox and Brunholtz stopped and questioned him, then took him to a distant room where they searched his briefcase and seized the cash. He was released in time to board his connecting flight. In Albuquerque, law enforcement officers again stopped Glasgow at the airport, searched his bags and car, but seized nothing and permitted him to leave. Glasgow was never charged with any crime.

The following week, Glasgow's attorneys began their efforts to recover his seized currency. Beginning with a phone call and letter to agent Brunholtz in St. Louis, these efforts included multiple Freedom of Information Act requests and numerous communications with DEA officials and attorneys in St. Louis and Washington, D.C. By the end of November 1988, and continuously thereafter, Glasgow's attorneys had unambiguously conveyed his intent to contest any attempt by DEA to forfeit the money.

On January 23, 1989, DEA sent a notice of seizure and intent to forfeit by certified mail to Glasgow and his attorneys. The notice advised:

In the alternative, you may contest the forfeiture of the seized property in UNITED STATES DISTRICT COURT. To do so, *you must file a claim of ownership and bond* with the DEA. Submit the bond in the amount shown above in a *cashier's check* or a *certified check* payable to the

souri, sitting by designation.

U.S. Department of Justice, or present satisfactory surety.

If you are indigent (needy and poor) you may not have to post the bond. To request a waiver of the bond, you must fully disclose your finances in a signed statement called a "Declaration in Support of Request to Proceed *IN FORMA PAUPERIS*" along with a claim of ownership of the property. Use the format of the *pauperis* declaration shown as Form 4 in the Appendix of Forms following Rule 48 of the Federal Rules of Appellate Procedure, or obtain a form from the DEA field office. The claim of ownership, with either bond or the "Declaration in Support of Request to Proceed *IN FORMA PAUPERIS*," must be filed within *twenty (20) days* of the *first date* of publication of the notice of seizure in the Wednesday edition of *USA Today*. The notice will be published three successive weeks. You should review that newspaper for the exact date.

(emphasis in original). The first publication turned out to be weeks later, on February 15, 1989. Glasgow and his attorneys missed it, and despite several conversations between the parties during this period, no one at DEA mentioned that the twenty-day claim period had begun. On March 17, Glasgow's counsel submitted a claim and bond. DEA rejected the claim as untimely, declared the money administratively forfeited, and summarily denied Glasgow's subsequent "petition for remission."[1]

Glasgow then filed this action against DEA and agents Fox and Brunholtz, alleging that the seizure violated his Fourth Amendment rights and that DEA's inadequate notice deprived him of due process in the administrative forfeiture proceeding. The district court denied defendants' motion to dismiss for lack of jurisdiction[2] but granted their motion for summary judgment. The court held that the January 23, 1989, notice of seizure and intent

to forfeit satisfied due process because it informed Glasgow that forfeiture proceedings had begun, warned him of time limits in which to file a claim and bond, and told him to review Wednesday editions of *USA Today* for the first date of publication. Therefore, the court concluded, Glasgow's Fourth Amendment claims were barred by his failure to raise them in the administrative forfeiture proceeding.

## II.

DEA conducts administrative forfeitures using the procedures set forth in the Tariff Act of 1930. *See* 21 U.S.C. § 881(d). The agency must publish notice of its intent to forfeit for three weeks in a newspaper of general circulation, *and* it must send "[w]ritten notice of seizure together with information on the applicable procedures ... to each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a).[3] If an interested party files a claim and bond within twenty days after the first publication, the agency *must* refer the matter to the United States Attorney for the district in which the article was seized for commencement of a judicial forfeiture proceeding. *See* 19 U.S.C. § 1608. Only if no claim and bond are filed may DEA itself declare the property forfeited. *See* 19 U.S.C. § 1609.

As we noted in *Woodall*, a claimant's right to compel the agency to proceed by judicial forfeiture is an important statutory check on the government's power to forfeit private property. Therefore, DEA's compliance with statutory and constitutional notice requirements are essential components of the statutory regime. In *Woodall*, DEA violated those requirements by knowingly sending written notice to the claimant at the wrong address. In this case, Glasgow and his counsel admit they received DEA's written notice;

---

1. This petition asks the forfeiting agency for discretionary relief from an administrative forfeiture. *See* 21 C.F.R. §§ 1316.79–81. DEA's denial of Glasgow's petition is not at issue on this appeal. *See United States v. Wood,* 851 F.2d 185, 188 (8th Cir.1988).

2. As our decision today in *United States v. Woodall,* 12 F.3d 791, makes clear, the district court

correctly determined that it had jurisdiction to consider Glasgow's constitutional and statutory challenges to the administrative forfeiture.

3. Congress added the personal notice requirement in 1984. *See* Pub.L. 98–473, Title II, § 311, 98 Stat. 2053; Pub.L. 98–573, Title II. § 213(a)(4), 98 Stat. 2984.

the question is whether that notice was adequate.

The statute required that DEA send Glasgow personal written notice of its intent to forfeit "together with information on the applicable procedures." 19 U.S.C. § 1607(a). Due process required that this notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Glasgow argues that the DEA notice failed to satisfy these standards because it omitted the one piece of information most critical to affording him a reasonable opportunity to be heard—the deadline for filing a claim and bond that would be timely under 19 U.S.C. § 1608. We agree.

Although the DEA notice advised Glasgow of the *existence* of a procedure for contesting the forfeiture, it was sent well before the twenty day claim period began and did not disclose either the first or the last date of that period. The government argues that its written notice was sufficient because all Glasgow had to do was look in every Wednesday edition of *USA Today* until he found the first notice. We think that is an unreasonably narrow view of DEA's due process obligations. We have examined the Wednesday edition of *USA Today* in the record on appeal. It lists hundreds of seizures by federal judicial district and DEA six-digit seizure number. As this case illustrates, there is a high risk that a written notice that merely refers to an unspecified future edition of this publication will fail to give actual notice of the claim period to all but the most sophisticated claimants. We conclude that known claimants' property interests are too constitutionally significant to be satisfied by this type of notice, particularly since the agency can so easily advise known claimants of precisely when they must file their claims.

In this regard, we note that the written notices of other forfeiting agencies have included the information withheld from Glasgow. So have DEA's written notices in other proceedings. For example, in *Willis v. United States,* 787 F.2d 1089, 1093 (7th Cir.1986), a DEA written notice that the court upheld as adequate advised:

> If you intend to place the matter in the United States District Court to contest the probable cause for this seizure, *a claim and cost bond of $250.00 must be filed with this office on or before September 16, 1981.*

(emphasis added.) Likewise, in *Sammons v. Taylor,* 967 F.2d 1533, 1546 (11th Cir.1992), an FBI forfeiture notice issued under 21 U.S.C. § 881 advised the claimant: "If you want to contest the seizure or forfeiture of the property in court, you must file a claim ... with the FBI by SEPTEMBER 26, 1988." The regulations of the Customs Service—the agency with the longest experience in applying the Tariff Act of 1930—require that the written notice to interested parties include "the newspaper *and expected dates* of publication of such notice." 19 C.F.R. § 162.45(b)(1) (emphasis added). Finally, the notice in *Woodall,* which DEA issued eleven months after the notice at issue in this case, included the date of first publication.[4]

Our conclusion that DEA's forfeiture notice was inadequate is reinforced by our perception that the record in this case reflects agency bad faith. Within one week of the seizure, DEA knew that Glasgow wanted his money back and intended to contest any forfeiture. The agency ignored his efforts to secure immediate return of his property and delayed taking any action for two months. It then sent Glasgow a written notice that failed to disclose when he should file a claim—information critical to his right to judicial forfeiture that the agency has routinely disclosed to potential claimants in other cases. Despite Glasgow's many communications with numerous DEA personnel, not once did anyone tell him of the deadline for filing a claim and bond—that is, not until March 31, 1989, when the agency finally revealed in rejecting his March 17 claim as untimely that the last date to file had been March 7, 1989.

---

4. Glasgow's brief on appeal asserted, and the government did not deny, that DEA notices since

1991 have included the date of first publication.

Thus, instead of providing Glasgow meaningful "information on the applicable procedures," as 19 U.S.C. § 1607(a) requires, the agency obscured what Glasgow most needed to know. Agency disclosures that reflect "an attitude of concealment rather than enlightenment" do not meet the basic demands of due process. *Menkarell v. Bureau of Narcotics,* 463 F.2d 88, 94 (3d Cir.1972). We hold that the administrative Declaration of forfeiture is void.[5]

## III.

The district court dismissed Glasgow's Fourth and Fifth Amendment claims against DEA agents Fox and Brunholtz without discussion. Whether summary judgment dismissing these claims was appropriate turns upon whether the forfeiture remedies in the Tariff Act preclude an action under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against federal officials for constitutional violations committed in the course of seizure and forfeiture. The Supreme Court defined the governing standard in *Schweiker v. Chilicky,* 487 U.S. 412, 423, 108 S.Ct. 2460, 2467, 101 L.Ed.2d 370 (1988):

> When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies.

Since *Chilicky,* apparently no court has decided the issue. *Compare Sammons,* 967 F.2d at 1545–50 (assumes *Bivens* action will lie but remands for transfer of venue), *with Ysasi v. Rivkind,* 856 F.2d 1520, 1526–28 (Fed.Cir.1988) (summary judgment dismissing *Bivens* claim reversed and case remanded for inquiry into whether forfeiture remedy was in fact an adequate alternative).[6] In

these circumstances, we will not affirm the summary dismissal of claims the district court has not expressly addressed.

The judgment dismissing Glasgow's claims against the United States is reversed. The case is remanded to the district court with instructions to vacate the DEA administrative forfeiture Declaration and to order the agency either to return Glasgow's property or to commence judicial forfeiture proceedings in the district court. The judgment dismissing Glasgow's claims against agents Fox and Brunholtz is reversed.

---

5. Therefore, we need not consider Glasgow's alternative argument that his letter of November 30, 1988, should be deemed an adequate claim of ownership under 19 U.S.C. § 1608. *Compare United States v. One 1987 Jeep,* 972 F.2d 472, 481 (2d Cir.1992); *Ramirez v. United States,* 767 F.Supp. 1563, 1567, 1570 (M.D.Fla.1991).

6. At least two earlier cases upheld *Bivens* actions against government officials for unconstitutional

seizures made in the forfeiture context. *See Seguin v. Eide,* 645 F.2d 804, 810–11 (9th Cir. 1981), *vacated on other grounds,* 462 U.S. 1101, 103 S.Ct. 2446, 77 L.Ed.2d 1328 (1983), *modified,* 720 F.2d 1046 (9th Cir.1983); *States Marine Lines, Inc. v. Shultz,* 498 F.2d 1146, 1156–57 (4th Cir.1974).

