Kenneth Eugene SEBER, Plaintiff,

v.

Michael A. UNGER, Cook County Sheriff's Office, United States Drug Enforcement Agency, and John & Jane Does, Defendants.

No. 94 C 1773.

United States District Court,
N.D. Illinois,
Eastern Division.

March 15, 1995.

Joseph M. Ferguson, U.S. Attorney's Office, Chicago, IL, for plaintiff.

Kenneth Eugene Seber, Lawrenceville, VA, pro se.

Joseph M. Ferguson, U.S. Attorney's Office, Chicago, IL, Drug Enforcement Admin.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Kenneth E. Seber ("Seber") seeks declaratory and monetary relief under 42 U.S.C. § 1983 against the United States Drug Enforcement Administration ("D.E.A."), unidentified D.E.A. agents John and Jane Does (the "Doe defendants"), the Cook County Sheriff's Office[1] and Seber's former attorney, Michael A. Unger ("Unger") in connection with the forfeiture of $9,800 in U.S. currency. Seber also appears to assert state-law claims against Defendant Unger.

■ The D.E.A. moves to dismiss the complaint against it for lack of subject matter jurisdiction, insufficiency of process, and failure to state a claim upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(1), (4), and (6), respectively. Unger moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).[2] Neither the Doe defendants nor the Cook County Sheriff's Office has been served with process. For the reasons stated below, the D.E.A.'s motion to dismiss is granted and Unger's motion for judgment on the pleadings is granted. However, Seber is granted until May 15, 1995, to file an amended complaint with respect to his state-law claims against Unger.

## FACTUAL BACKGROUND

Seber's well-pleaded factual allegations, accepted as true on a motion to dismiss, see Gillman v. Burlington Northern R.R. Co., 878 F.2d 1020, 1022 (7th Cir.1989), are as follows. In August of 1992, Seber returned to the United States from a trip abroad. When he re-entered the United States through O'Hare International Airport in Chicago, Illinois, Seber was stopped by agents of the U.S. Customs Service. Compl. ¶¶ 8–10. Customs Service agents detained Seber after determining that he was wanted in Virginia on outstanding arrest warrants. Id. ¶ 12. Seber was then transported to the Cook County Jail. While processing Seber, a Cook

---

1. Although Seber names the "Cook County Sheriff's Office" as a defendant, it is clear from his complaint that his intention is to name individual employees of the Sheriff's Office as defendants: "Defendant Cook County Sheriff's Office, is identifiable as those employees of the Cook County Sheriff's Department assigned to the Cook County Jail at the time of the infractions alluded to in the complaint...." Compl. ¶ 4. Moreover, in the caption to his complaint, Seber includes employees of the Cook County Sheriff's Office in his description of the defendants named as "John and Jane Does." To avoid confusion and for ease of exposition, this opinion shall use the named defendant "Cook County Sheriff's Office" to refer to unnamed employees of the Cook County Sheriff's Office. As indicated in the text, the term "Doe defendants" shall refer to unnamed D.E.A. agents.

2. Insofar as Unger has not yet filed an answer to the complaint, his motion for judgment on the pleadings is premature. Rule 12(c) authorizes a party to move for judgment on the pleadings "[a]fter the pleadings are closed." FED.R.CIV.P. 12(c). See 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1367 at 513 ("[D]efendant may not move under Rule 12(c) until after he has answered.").

Because Under's motion essentially serves the same purpose as a Rule 12(b)(6) motion, we shall adopt the common practice of treating the premature Rule 12(c) motion as a Rule 12(b)(6) motion. See, e.g., Geir by Geir v. Educational Service Unit No. 16, 144 F.R.D. 680, 686 (D.Neb. 1992); Geltman v. Verity, 716 F.Supp. 491, 492 (D.Colo.1989); Gahres v. Phico Ins. Co., 672 F.Supp. 249, 251 (E.D.Va.1987); Weinstein v. Carrane, 1991 WL 247684 (N.D.Ill.1991). This technical procedural point is of little substantive importance because a Rule 12(c) motion for "judgment on the pleadings is subject to the same standard as a motion for dismissal for failure to state a claim." Thomason v. Nachtrieb, 888 F.2d 1202, 1204 (7th Cir.1989); see also Gillman v. Burlington N. R.R. Co., 878 F.2d 1020, 1022 (7th Cir.1989). Furthermore, pursuant to Rule 12(c) and as permitted by Rule 12(h)(2), Defendant Unger has in effect raised a proper Rule 12(b)(6) motion by alleging that the complaint fails to state a cause of action. Unger has attached materials outside the pleadings to his motion to dismiss. Because Seber has not had proper notice, the Court shall decline Unger's implicit invitation to treat his motion as one for summary judgment and shall not consider any material outside the pleadings in ruling on Unger's motion.

County Sheriff's deputy found that Seber was in possession of $9,800 in United States currency. *Id.* ¶ 13. The Customs agents stated that they were aware of this fact and that it was not illegal to have money. The deputy stated that Seber may be able to make bail. *Id.* A Customs agent responded that there was nothing he could do, and that only the D.E.A. could seize the money with probable cause. *Id.* ¶ 154. The deputy then called the D.E.A. office in Chicago. *Id.* ¶ 15. Approximately one hour later, an unidentified female D.E.A. agent seized the currency in order to prevent Seber from making bond in the event that a bond were set. *Id.* ¶ 16. In response to an inquiry by Seber concerning why his money was being confiscated, the D.E.A. agent answered that Seber was "under investigation" at the request of the Cook County Sheriff's Office. *Id.* ¶¶ 17, 18.

Subsequently, Seber retained Unger to recover his money. Seber paid Unger an initial retainer of $1,000.00 dollars. Unger told Seber that he could recover the money "no problem." *Id.* ¶¶ 19, 20. Unger asked Seber about his employment and whether he retained receipts. Seber informed Unger that he earns approximately $50,000 per year as a roofer and that he had plenty of receipts which he retains for tax purposes. Unger told Seber that if Seber sent him the receipts, he could definitely recover Seber's money within thirty days. *Id.* ¶¶ 20–22. Seber mailed Unger the receipts. *Id.* ¶ 23. Approximately, three weeks later, Unger called Seber and stated that he needed an additional $1,000.00 for filing fees—stating that he could not get on the court docket without $1,000.00. *Id.* ¶ 24. Seber sent Unger an additional $1,000.00. *Id.* ¶ 25. Seber alleges that Unger never had any intention of attempting to recover Seber's money and that Unger was merely attempting to "take the plaintiff for as much money as he possibly could before the plaintiff went to prison." *Id.* ¶ 27. Seber contends that Unger perpetrated a fraud against him by asserting that

he could recover Seber's money "no problem" and by telling Seber that the clerk of court needed an additional $1,000.00 in filing fees to get Seber's case on the docket. *Id.* ¶ 30. Seber also alleges that "Unger has plotted and planned to deprive plaintiff of access to the court, and Due Process." *Id.* ¶ 31. Seber alleges that he has suffered many physical symptoms—including weight loss, ulcers, and vomiting—as a result of Unger's deception. *Id.*

With respect to the D.E.A., Seber alleges that the D.E.A. committed a "Due Process violation" by "knowingly confiscat[ing] plaintiff's money without cause and with the direct intention of depriving plaintiff of the ability to bond out of jail." *Id.* ¶ 32.[3]

Seber prays for: (1) a declaratory judgment that the defendants violated his Constitutional rights; (2) compensatory damages in the amount of $12 million from defendant Unger, $100,000 from the D.E.A., and $250,000 from the Cook County Sheriff's Office; (3) punitive damages in the amount of $12 million from defendant Unger and $1 million from each of the remaining defendants; (4) $9,800.00 plus interest from the D.E.A.; (4) $2,000.00 from Unger; (5) $1,500.00 plus interest from the Cook County Sheriff's Office (or the return of his property undamaged); and (6) costs of this action.

## DISCUSSION

### A. *Claims Against the D.E.A.*

*Seber's Section 1983 Claims*

Seber purports to assert a § 1983 claim against the D.E.A. In turn, the D.E.A. moves to dismiss for failure to state a claim upon which relief can be granted.

 A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the suit. *Triad Assocs., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir.1989), *cert. denied*, 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). In considering a Rule 12(b)(6) motion, the court

---

3. Although Seber's allegations concerning the Cook County Sheriff's Office are not presently before the Court, we note briefly that Seber contends that the Sheriff's Office "knowingly conspired with the D.E.A. to keep the plaintiff from money that was rightfully his, in order that the plaintiff could not bail out of jail" and that the Sheriff's Office unlawfully retained Seber's personal property, repeatedly refusing to forward it to him. Compl. ¶¶ 28–29, 34.

must accept all well-pleaded facts as true, draw all reasonable inferences in favor of the plaintiff, and resolve all ambiguities in favor of the plaintiff. *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir.1992). The federal notice pleading system does not favor dismissal for failure to state a claim. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir. 1988). The only question for the court under Rule 12(b)(6) is whether relief is possible under any set of facts that could be established consistent with the allegations. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). Further, a complaint need not set out *any* legal theory; and, an incorrect legal theory is not fatal. *Bartholet*, 953 F.2d at 1078.

▮▮▮ By its terms, § 1983 provides aggrieved individuals an ability to redress deprivations of Constitutional rights where the deprivation occurs under color of state law. *See* 42 U.S.C. § 1983. It follows, of course, that "[t]he statute deals only with those deprivations of rights that are accomplished under the law of 'any State or Territory.'" *District of Columbia v. Carter*, 409 U.S. 418, 423–25, 93 S.Ct. 602, 605–06, 34 L.Ed.2d 613, *reh'g denied* 410 U.S. 959, 93 S.Ct. 1411, 35 L.Ed.2d 694 (1973). Thus, a section 1983 claim may only lie when asserted against those acting under color of state or territorial law. Consequently, "actions of the Federal Government and its officers are beyond the purview" of both the fourteenth amendment [for which § 1983 was enacted to enforce] and § 1983. *Id.* at 424, 93 S.Ct. at 606; *see also Daly–Murphy v. Winston*, 837 F.2d 348,

355 (9th Cir.1987); *Stonecipher v. Bray*, 653 F.2d 398, 401 (9th Cir.1981), *cert. denied* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982). Because the D.E.A. is a federal agency acting under color of federal law there is no valid basis for Seber's § 1983 claim against it.[4] *Stonecipher*, 653 F.2d at 401 (finding no § 1983 cause of action against IRS because it is a federal agency and its agents performed no acts under color of state law). Accordingly, we dismiss Seber's § 1983 claims against the D.E.A. with prejudice.[5]

## Collateral Attack Upon Administrative Forfeiture Proceedings

Seber also seeks recovery of the $9,800 in U.S. currency seized by the D.E.A. The D.E.A. moves for dismissal of this claim for lack of subject matter jurisdiction.

▮▮▮ When considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir.1993). A party who invokes the jurisdiction of a federal court must allege all facts necessary to give the court jurisdiction of the subject matter. *See Kontos v. United States Dept. of Labor*, 826 F.2d 573, 576 (7th Cir.1987) (noting that it is the plaintiff's burden to establish that jurisdictional requirements have been met); *Western Transp. Co. v. Couzens Warehouse & Distribs. Inc.*, 695 F.2d 1033, 1038 (7th Cir.1982) ("[T]he party alleging jurisdiction must support its allegation with competent proof of jurisdictional facts.").

---

4. The Court's opinion today only addresses the D.E.A.'s liability insofar as the agency itself is named as a defendant. We do not reach the question of whether Seber has stated a cause of action against individual D.E.A. agents. In this regard, it should be noted that although individual D.E.A. agents acting under the color of *federal* law are no more subject to § 1983 liability than is the D.E.A., they may be liable under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

5. Seber mistakenly suggests that this Court has jurisdiction pursuant to the Declaratory Judgments Act. 28 U.S.C. §§ 2201, 2202. The De-

claratory Judgments Act does not provide "an independent grant of jurisdiction, rather jurisdiction must be predicated on some other statute." *Rueth v. U.S. E.P.A.*, 13 F.3d 227, 231 (7th Cir. 1993). By enacting the Declaratory Judgments Act "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 878, 94 L.Ed. 1194 (1950). Because Seber has failed to establish an independent basis for this Court's jurisdiction over his § 1983 claims against the D.E.A., he may not rely upon the Declaratory Judgments Act as a basis for subject matter jurisdiction.

The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether, in fact, subject matter jurisdiction exists. *Capitol Leasing,* 999 F.2d at 191 (citing *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir.1979)); *see also Roman v. United States Postal Service,* 821 F.2d 382, 385 (7th Cir. 1987). The court must dismiss a case without reaching the merits if it concludes that it has no jurisdiction. *Shockley v. Jones,* 823 F.2d 1068, 1070 n. 1 (7th Cir.1987).

■ Seber's currency was administratively forfeited on March 26, 1993, pursuant to 21 U.S.C. § 881, 19 U.S.C. §§ 1607–1618. *See* Snider Decl. ¶ 4(g); Mem. Supp. Def.'s Mot. Dis., Ex. 10, (Declaration of Forfeiture). The D.E.A. sent a notice of seizure letter to Seber's address on October 5, 1992 and published the seizure in USA Today for three consecutive weeks beginning on October 14, 1992. *See* Snider Decl. ¶¶ 4(b), (c). Seber submitted an untimely claim for the seized currency and was represented by Defendant Unger in his efforts to recover his currency. *See* Mem. Supp. Def.'s Mot. Dis., Ex. 4–6, 9. The effect of such an administrative forfeiture is set forth at 19 U.S.C. § 1609(b) which provides that "[a] declaration of forfeiture under this section shall have the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States."

The Seventh Circuit's decision in *Linarez v. U.S. Dep't of Justice,* 2 F.3d 208 (7th Cir.1993), compels the conclusion that this Court is without subject matter jurisdiction over Seber's collateral attack upon the administrative forfeiture. With regards to seizures of U.S. currency of less than $500,000, the Seventh Circuit held that a district court may be divested of jurisdiction by the actions of a federal agency:

> By initiating administrative forfeiture proceedings pursuant to 19 U.S.C. § 1607, the agency that seized the property divests the district court of its jurisdiction over the forfeiture proceedings. The district court remains without jurisdiction over the forfeiture unless an interested party files a claim of interest and posts a bond with the

agency within twenty days from the date of the first publication of the notice of seizure pursuant to 19 U.S.C. § 1608 and 21 C.F.R. § 1316.76 (1992). If the claim is not filed and the bond not posted, the forfeiture process continues administratively, without judicial intervention. *See* 19 U.S.C. § 1609(a); 21 C.F.R. § 1316.77(a) (1992).

*Id.* at 211–12. The D.E.A. received a claim and cost bond from Seber's attorney Unger on November 24, 1992, more than 20 days after the first publication of seizure on October 14, 1992. *See* Snider Decl. at ¶ 4(d). The untimely filing of the claim and cost bond divested this Court of jurisdiction, just as the District Court was divested of jurisdiction in *Linarez:*

> In sum, the district court was divested of jurisdiction over the forfeiture of Linarez's currency when the DEA instituted administrative forfeiture proceedings. Linarez did not return jurisdiction to the district court by filing a claim of interest and posting a bond with the DEA within twenty days after August 21, 1991, the first day on which the DEA published a notice of forfeiture. Because the DEA had jurisdiction of the forfeiture, Linarez could not seek recovery of his currency in the district court.

*Linarez,* 2 F.3d at 213. For the same reasons, this Court must dismiss with prejudice Seber's claim against the D.E.A. seeking recovery of the seized funds for lack of subject matter jurisdiction. Because all of Seber's claims against the D.E.A. are dismissed with prejudice, the D.E.A. is dismissed as a party defendant from this action.

### B. *Claims against Unger*

Seber seeks a declaratory judgment that Unger violated his Constitutional rights as well as compensatory and punitive damages each in the amount of $12 million. Seber also seeks $2,000 plus interest in compensatory damages against Unger presumably in connection with the $2,000 he paid to Unger for legal services. Unger moves to dismiss

for failure to state a claim upon which relief can be granted.[6]

*Section 1983 Claim*

 Seber's § 1983 claim against Unger need not detain us long. Unger is a private party and Seber's § 1983 claims against Unger alleging denial of meaningful access to the courts and denial of due process fail to state a cause of action for which relief may be granted. Unger is an attorney in private practice and did not act under color of state law when he represented Seber. Private parties are not subject to liability under § 1983. *District of Columbia*, 409 U.S. at 423–24, 93 S.Ct. at 605–06. Therefore, Seber's claims that Unger has violated his Constitutional rights must be dismissed for failure to state a claim upon which relief may be granted. Also, as explained above, the Declaratory Judgments Act does not provide an independent basis for Seber's Constitutional claims. Therefore, Seber's claim for declaratory relief against Defendant Unger must also be dismissed.

*State Law Claims*

 Although Seber's Complaint is far from clear, it appears that Seber is attempting to assert some undefined state-law causes of action against Unger. Unger does not meaningfully address Seber's state-law claims in his motion for judgment on the pleadings [7]; however, because this Court's *sua sponte* review of the pleadings suggests that Seber has no conceivable basis for invoking this Court's subject matter jurisdiction with respect to his claims against Unger, we dismiss those claims, without prejudice, on our own initiative.

Seber's state-law claims against Unger all appear to be based upon theories of breach of contract, common law tort (specifically fraud), or legal malpractice. Seber has not sufficiently pleaded jurisdictional facts—such as his citizenship—to allow this Court to determine whether diversity of citizenship exists between the parties. However, even if this Court were to determine that the parties are citizens of diverse states, it appears that Seber's state-law claims must be dismissed because Seber could not meet the $50,000 amount in controversy requirement. 28 U.S.C. § 1332(b).

Assuming *arguendo* that Seber could prevail in a breach of contract claim against Unger for failure to recover his seized currency, it is clear to a legal certainty that Seber's recovery could not even approach $50,000. Seber's actual damages would only be approximately $12,000 ($9,800 in seized currency plus $2,000 in amounts paid to Unger). Because Seber would not be entitled to punitive damages or attorney's fees on a breach of contract claim, it is plain that his recovery would not approach $50,000. Therefore, Seber cannot invoke the Court's diversity jurisdiction to assert his breach of contract claim.

Similarly, Seber cannot invoke the Court's diversity jurisdiction to assert his supposed legal malpractice claim. Again, as noted above, Seber's actual damages are far below the $50,000 minimum required by 28 U.S.C. § 1332(b); and, by statute, punitive damages are not available in Illinois for legal malpractice claims. 735 ILCS 5/2–1115; *see also Calhoun v. Rane*, 234 Ill.App.3d 90, 175 Ill. Dec. 304, 308, 599 N.E.2d 1318, 1322 (1st Dist.1992). Moreover, Seber could not circumvent this statutory bar against punitive damages by recasting his claim as one for fraud or wilful and wanton conduct. *Calhoun* plainly holds that where the alleged fraud arises from the provision of legal services or where the wilful and wanton conduct is related to the acts of professional malpractice, punitive damages are unavailable. *Calhoun*, 175 Ill.Dec. at 309, 599 N.E.2d at 1323. Because it appears to the Court, as a legal certainty, that Seber's potential claims against Unger do not meet the statutory amount in controversy threshold, the Court lacks subject matter jurisdiction to entertain Seber's state-law claims. Seber's relief, if he

6. *See supra* note 1.

7. In his motion, Unger argues that various exhibits accompanying his motion "illustrate that Unger worked diligently to seek the return of Plaintiff's money"; however, such an argument—which invites the Court to resolve a factual dispute in his favor—is plainly misplaced on a motion to dismiss for failure to state a claim.

is entitled to any, must be found in the state courts. Accordingly, Seber's claims against Unger are dismissed without prejudice.[8] However, Seber is granted until May 15, 1995, to file an amended complaint in an effort to cure the jurisdictional shortcomings noted in this opinion with respect to his state-law claims against Unger.[9] Specifically, Seber is advised, at a minimum, to include allegations concerning both his and Unger's state of citizenship and to allege his facts with sufficient clarity to permit this Court to make a reasoned determination as to whether his claims could possibly satisfy the amount in controversy requirement of 28 U.S.C. § 1332(b).

*Seber's Claims Against The Unnamed and Unserved Defendants*

Having dismissed Seber's claims against the D.E.A. and Unger, the Court turns its attention to the remaining claims in this case—those against the Cook County Sheriff's Office and the Doe defendants (unnamed D.E.A. agents). No individual falling within either of these classes of defendants has been served.

Seber filed this action on March 21, 1994, and was granted leave to proceed *in forma pauperis* on July 7, 1994; however, to date, as just noted, Seber has still failed to effect service of process on either the Cook County Sheriff's Office or the Doe defendants.[10]

■ Rule 4(m) [11] directs the court to dismiss an action without prejudice when service of the complaint is not made upon the defendant within 120 days after the filing of the complaint. Under Rule 4(m) dismissal is mandatory unless the plaintiff can show "good cause." *See Del Raine v. Williford,* 32

F.3d 1024, 1030 (7th Cir.1994); *Powell v. Starwalt,* 866 F.2d 964, 965 (7th Cir.1989). The plaintiff bears the burden of demonstrating "good cause." *See Bachenski v. Malnati,* 11 F.3d 1371, 1376 (7th Cir.1993). Accordingly, Seber is hereby ordered to show cause why his claims against the unserved defendants should not be dismissed for failure to effect service of process. Seber shall be granted until May 15, 1995, to submit a memorandum establishing good cause for his failure to effect timely service. Seber is explicitly put on notice that his memorandum should include a detailed account, supported by appropriate exhibits where possible, of his efforts to ascertain the names of—and effect service of process on—the D.E.A. agents and Cook County Sheriff's Office personnel involved in his alleged Constitutional violations.

■ Seber is further advised that although an action dismissed without prejudice under Rule 4(m) may be refiled, such a refiling will be allowed only if it satisfies the applicable statute of limitations. *See, e.g., Bachenski* 11 F.3d at 1373, 1378; *Lewellen v. Morley,* 875 F.2d 118, 119–20 (7th Cir.1989). Filing of the original claim without effective service of process does not toll the statute of limitations. *See Lewellen,* 875 F.2d at 119–20. Moreover, Seber's inability to name the unidentified defendants does not toll the statute of limitations. *See Sassi v. Breier,* 584 F.2d 234, 235 (7th Cir.1978) ("We do not consider that the naming of a 'John Doe' defendant in the complaint tolls the statute of limitations until such time as a named defendant may be substituted."). Thus, Seber's claims against the unnamed and unserved defendants may now be time barred.

**8.** Of course, we pass no judgment on the merits of Seber's claims against Unger. In no manner does this Court condone the conduct alleged by Seber against Unger. We merely hold that Seber has come to the wrong forum to redress his alleged injuries.

**9.** We emphasize to Seber that the Court is only granting leave to amend his complaint with respect to his state-law claims against Unger.

**10.** Although discovery was stayed in this case on December 5, 1994, this stay cannot explain or excuse Seber's failure to identify and serve the unnamed defendants in a timely fashion insofar

as the stay was not entered until at least 140 days after Seber was granted leave to proceed *in forma pauperis.*

**11.** Fed.R.Civ.P. 4(m) provides:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

The § 1983 claims Seber seeks to assert against the Cook County Sheriff's Office and the *Bivens* action Seber seeks to assert against the Doe defendants must satisfy the 2 year Illinois statute of limitations applicable to a "tort action for the recovery of damages for personal injuries." *See Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985); *Kalimara v. Illinois Dep't of Corrections,* 879 F.2d 276, 276–77 (7th Cir.1989); *Lewellen,* 875 F.2d at 119. The alleged Constitutional violations at issue in this action took place on August 2, 1992—well over two years ago. *See* Mem. Supp. Def.'s Mot. Dis., Ex. 9, Seber's request for remission and/or mitigation. Thus, it would appear that refiling of this complaint against either the Cook County Sheriff's Office or the Doe defendants will be barred by the statute of limitations. Thus, unless Seber is successful in establishing good cause for failing to effect timely service, his action will be dismissed with prejudice.

### CONCLUSION

Defendant Drug Enforcement Administration's motion to dismiss the complaint [31–1] is granted. Defendant Michael A. Unger's Motion for Judgment on the Pleadings [17–1] is granted in part. Plaintiff Kenneth Seber is granted until May 15, 1995, to submit a memorandum establishing good cause for failing to effect timely service on defendant Cook County Sheriff's Office and defendants John and Jane Does. Seber's memorandum shall include a detailed account—and supporting evidence—of his efforts to identify and serve the unnamed and unserved defendants. Seber is also granted until May 15, 1995, to file an amended complaint in an effort to cure the jurisdictional shortcomings noted in this opinion with respect to Seber's potential state-law claims against Unger.