No. 95-3194

Leo Muhammed; Antoinette    *
Muhammed,    *
   *
       Appellants,    *
   *   Appeal from the United States
     v.    *   District Court for the
   *   Eastern District of Missouri.
Drug Enforcement Agency,    *
Asset Forfeiture Unit,    *
   *
       Appellee.    *

Submitted: February 15, 1996

Filed: August 8, 1996

Before BEAM, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

BEAM, Circuit Judge.

The Muhammeds appeal the district court's dismissal of their motion for return of seized property. We reverse.

## I. BACKGROUND

This is a cautionary tale, illustrating the mischief to which our eagerness to employ forfeiture as a weapon in the war on drugs can lead. Although, due to the posture of the case, the factual record is sparse, the following can be gleaned from the complaint, affidavits, and the subsequent motion to dismiss. The Muhammeds, a family from the Los Angeles area of California, were in St. Louis, Missouri, with their two-month-old infant son visiting family. According to their affidavits, they purchased tickets to return to the Los Angeles area at a suburban travel agency and paid in cash. On September 1, 1994, when the family arrived at the

airport to depart, Drug Enforcement Administration (DEA) agents approached. The Muhammeds were separated and each was taken to be interviewed. No Miranda warnings were given. Mr. Muhammed told the agents that he worked for the Nation of Islam, collecting cash from chapter activities. He used St. Louis as his midwest base because he had family there. Agents found $70,990 in cash in Mr. Muhammed's bags. A drug dog was called and alerted to the cash, which was then seized.

Meanwhile, Mrs. Muhammed was asked if she had any cash. She had $22,000 in her girdle. She was uncertain as to where her husband had obtained the cash. When asked if the money could have come from drug sales, she said she did not know. The drug dog alerted to that cash as well, which was also seized.

The Muhammeds sought counsel who, in turn, filed an action in federal district court on September 21, 1994, for the return of the Muhammeds' property. DEA receipts of both seizures were attached. On the same day the Muhammeds mailed copies of the motion, the receipts, and their attorney's affidavit to the DEA. The motion evidently triggered administrative forfeiture proceedings. On September 26, notice of seizure and intent to forfeit the $70,990 was mailed, individually, to both the Muhammeds. That notice was received by them and explained that to contest the forfeiture they needed to submit personally signed claims and a cost bond to the DEA by a date certain. The notice also explained how to obtain waiver of the cost bond. The Muhammeds and their counsel did not correctly follow these directions. Rather, they amended their complaint to include the notice of seizure and to include personal affidavits by each of them asserting that the money in question was lawfully acquired. On November 3, the Muhammeds sent copies of the amended complaint, affidavits, and receipts to the DEA along with a cover letter listing the seizure number per the instructions on the notice of seizure and requesting release of the property. The letter specifically asked the DEA if the Muhammeds needed to

provide additional material to gain release of the property.[1]  Rather than reply, the DEA chose to categorize the Muhammeds' actions as petitions for remission or mitigation and declared the $70,990 administratively forfeited on November 14, 1994.  We cannot tell from the record what occurred with respect to the $22,000.  On February 27, 1995, the DEA filed a motion to dismiss the Muhammeds' claim for return of their property.  The district court dismissed the Muhammeds' action because it found that they had failed to contest the forfeiture of the $70,990 through the DEA's administrative procedure.

The Muhammeds appeal, arguing that: 1) their complaint, viewed in the light most favorable to them, states a claim; 2) the motion to dismiss should not have been considered because it was grossly out of time; 3) the district court erred in dismissing the action with respect to Mrs. Muhammed's $22,000; and 4) the district court erred in failing to convert the government's motion to dismiss to one for summary judgment.

## II. DISCUSSION

While there is some question as to the nature of the action the Muhammeds filed in district court, the district court treated it as a 41(e) motion for the return of property under the Federal Rules of Criminal Procedure.[2]  The Muhammeds have now adopted this

---

[1]Although the district court apparently chastises the Muhammeds for failure to include the DEA seizure number on their initial complaint and correspondence to the DEA, those documents predated the Muhammeds' receipt of any such number from the DEA. The original complaint and correspondence did include copies of the DEA receipts which were adequate to apprise both the court and the agency of which seizures were in issue.

[2]Rule 41(e) provides:

    A person aggrieved by an unlawful search and seizure or
    by the deprivation of property may move the district
    court for the district in which the property was seized
for the return of the property on the ground that such person is entitled to lawful possession of the property.
    The court shall receive evidence on any issue of fact

characterization in their brief and, upon the court's inquiry at oral argument, affirmed that this is indeed the correct characterization of their action. But see supra n.2. Thus, the ultimate question is whether the district court erred in declining to assert its equitable jurisdiction under Rule 41(e).

Under the current statutory scheme, the government may declare the forfeiture of up to $500,000 administratively. 19 U.S.C. §§ 1607-1609; 21 U.S.C. § 881. That is, after seizure and

---

necessary to the decision of the motion.

Fed. R. Crim. P. 41(e). The Muhammeds argue, however, that the government's motion should be considered as a 12(b)(6) motion for failure to state a claim Federal Rules of Civil Procedure. They further argue that the district court should have converted the 12(b)(6) into one for summary judgment under Federal Rule Civil Procedure 56 as matters extraneous to the pleading were considered. While this argument is problematic, it is not totally baseless, as many cases have indicated that Rule 41(e) motions filed outside of any criminal proceeding should be considered as civil actions. See, e.g., United States v. Woodall, 12 F.3d 791, 794 n.1 (8th Cir. 1993) (court should liberally construe 41(e) motion filed outside of a criminal proceeding to invoke the proper remedy); Onwubiko v. United States, 969 F.2d 1392, 1397 (2d Cir. 1992) (41(e) motions should be treated as civil complaints where there is no ongoing criminal action); Grant v. United States; 282 F.2d 165, 168 (2d Cir. 1960) (J. Friendly) (such a motion is in effect a complaint initiating a civil action). However, even under the civil rules, the government's motion to dismiss is best characterized as a 12(b)(1) motion with which it is permissible to attach documents establishing jurisdictional facts. Seber v. Unger, 881 F. Supp. 323, 327-28 (N.D. Ill. 1995). It is somewhat ironic that the government, while criticizing the Muhammeds for ambiguity as to their cause of action, has failed to be a model of procedural clarity itself. In any case, the Muhammeds were permitted to respond to the motion with whatever additional evidence they chose to submit, so there was no prejudice. Nonetheless, in reviewing this motion to dismiss on jurisdictional grounds, we accept the underlying allegations in the Muhammeds' complaint as true. Id. at 327. See generally, Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991).

constitutionally adequate notice of intent to forfeit, the government may declare the money forfeited if no interested party opposes the forfeiture by filing a personal claim and a cost bond (or a declaration of inability to file the cost bond) with the DEA within the statutorily proscribed time limits. Id. If an interested party opposes the forfeiture, the government is put to its proof in federal district court. 19 U.S.C. §§ 1608, 1615. If there is no opposition and the property is administratively forfeited, the courts may review the administrative procedure leading to that forfeiture, but not the merits of the forfeiture itself.[3] See 19 U.S.C. § 1609(b); United States v. Woodall, 12 F.3d 791, 793, 795 (8th Cir. 1993) (judicial review is fundamental safeguard against government agencies' wrongful seizure of citizens' property); see also Scarabin v. Drug Enforcement Admin., 919 F.2d 337, 338 (5th Cir. 1990) (while administrative decisions on the merits of petitions for mitigation and/or remission may not be reviewed, process underlying those decisions are subject to review to ensure that proper procedural safeguards are followed).

If a citizen files a 41(e) motion in district court before the administrative forfeiture commences, an action frequently taken to force the government agency to act expeditiously, the government's subsequent initiation of administrative forfeiture proceedings is ordinarily a sufficient basis for a court to abstain from exercising jurisdiction over the dispute unless the citizen complies with the DEA's administrative

---

[3]Although one could argue that a total lack of probable cause in the initial seizure is deficient procedure, our cases have held that citizens must contest such deficiencies through the administrative forfeiture, if there is one, rather than circumvent such process through the courts. See Woodall, 12 F.3d at 795.

-5-

procedures to contest the forfeiture.[4]  See In re Harper, 835 F.2d 1273, 1274-75 (8th Cir.

---

[4]Some circuits hold that intervening administrative forfeiture proceedings divest the district court of jurisdiction altogether, see Linarez v. United States Dep't of Justice, 2 F.3d 208, 211-12 (7th Cir. 1993), but our view is more moderate.  Although Federal Rule of Criminal Procedure 41(e) motions may not be used to attack antecedent civil forfeitures, see Fed. R. Crim. P. 54(b)(5); United States v. Rapp, 539 F.2d 1156, 1160 (8th Cir. 1976), such motions which predate any forfeiture proceeding are not being used to attack a civil forfeiture.  It is the administrative forfeiture which is being used to attack the motion.  The motion has invoked the court's equity jurisdiction, which, depending on the equities of the situation, may or may not be defeated by the subsequent initiation of administrative forfeiture proceedings.  See In re Harper, 835 F.2d 1273, 1274 (8th Cir. 1988) (district court may decline to exercise existing equity jurisdiction when party has not acted equitably in subsequent administrative action).  In a word, it often matters in the legal world who acts first.

1988) (Rule 41(e) motion, filed prior to administrative forfeiture proceedings invokes equity jurisdiction, but citizen's failure to contest the administrative proceeding in any way justifies district court's refusal to exercise that jurisdiction); United States v. Rapp, 539 F.2d 1156, 1160-61 (8th Cir. 1976) (while equity jurisdiction is not dependent on label, defendant in a criminal proceeding may not use 41(e) motion to attack a forfeiture where the motion does not predate the forfeiture or the indictment, and where property in question is not evidence in an ongoing case). Here, the Muhammeds filed their 41(e) motion before the administrative forfeiture and opposed the forfeiture action, although imperfectly. The question, then, is whether the district court ought to have exercised its jurisdiction.

The Muhammeds admit that they did not file the cost bond or a request for waiver of the cost bond, or move for a district court stay.[5] Rather they relied on their 41(e) motion, its amendment, their personal affidavits and accompanying cover letter to the DEA to forestall the forfeiture. This was an error, but an understandable one brought on by the inadequacies of the DEA's notice. Moreover, equity is sometimes tolerant of errors. In re

---

[5]We note that many courts have found failure to file the cost bond excusable for sundry reasons. See, e.g., Onwubiko, 969 F.2d at 1397-99; Camacho v. United States, 645 F. Supp. 725, 727 (E.D.N.Y. 1986).

<u>Harper</u>, 835 F.2d at 1274.  While the notice of seizure and intent to forfeit instructs parties what they must do to contest the impending forfeiture in district court, it in no way indicates that parties who are <u>already</u> in district court need to start over:

TO CONTEST THE FORFEITURE

> In addition to or in lieu of petitioning for remission or mitigation, you may contest the forfeiture of the seized property in UNITED STATES DISTRICT COURT.  To do so, you must file a claim of ownership and cost bond with the DEA.  Submit the bond in the amount shown above in the form of a cashier's check or a certified check **payable to the U.S. Department of Justice.** [sic] or present satisfactory surety.  **<u>Claims must be signed by the parties making the claim.</u>**  Unsupported submissions signed by attorneys are insufficient to satisfy the requirement the claims be personally executed.
>
> If you are indigent (needy and poor) you may not have to post the bond.  To request a waiver of the bond, you must fully disclose your finances in a signed statement called a "Declaration in Support of Request to Proceed *In Forma Pauperis*" along with a claim of ownership of the property.  Use the format of the *pauperis* declaration shown as Form 4 in the Appendix of Forms following Rule 48 of the Federal Rules of Appellate Procedure or obtain a form from a DEA field office.  The claim of ownership, with either bond or the "Declaration in Support of Request to Proceed *In Forma Pauperis*" must be filed within **<u>twenty (20) days</u> of the <u>first date</u>** of the publication of the notice of seizure in the edition of the <u>USA Today</u> newspaper referenced above.  The notice will be published three successive weeks.

Joint App. at 24 (emphasis in original) (citation omitted).  This notice is clearly focused on instructing parties not yet contesting the forfeiture in court what procedures must be followed.  It does not instruct parties already in court that the DEA's action nullifies their ongoing court actions to retrieve the property unless the party starts over.  However, in a proceeding of this nature, due process requires that notice be reasonably calculated, <u>under all the circumstances</u>, to apprise the party of the action against them and afford the opportunity to object.  <u>Woodall</u>, 12

F.3d at 794. In order to adequately perform this function, the notice must include all critical information. Glasgow v. United States Drug Enforcement Admin., 12 F.3d 795, 798 (8th Cir. 1993). In this situation, where the government is the drafter, the sophisticated party, and the one who benefits from an owner's confusion as to the effect of the administrative action on the owner's ongoing court actions to regain the property in question, due process requires more. This is especially so in a case where the owners of the property have put the DEA on notice that they are seeking return of the property in court and that they have not understood the administrative requirements as to the cost bond. See Scarabin, 919 F.2d at 339 (DEA may not ignore citizen's response to seizure notice, even if technically in error, where response contains the necessary information); see also Aero-Medical, Inc. v. United States, 23 F.3d 328, 330-31 (10th Cir. 1994) (it is unreasonable for the DEA to ignore its actual knowledge that notice is inadequate even if notice is otherwise technically adequate). For example, had the DEA sent notice of intent to forfeit to a non-English speaker and received a communication to the effect of "no hablo Ingles," would bureaucratic stonewalling have been an adequate response?

Given the areas left unaddressed by the notice, reasonable persons could believe that since they were already in court they need not worry. Or, if uncertain, a reasonable person could believe that inquiry of the DEA would reveal whether, indeed, those already in court need to start over. A reasonable person would ordinarily not believe that their government would ignore their inquiry and proceed as if it had never been sent. See Glasgow, 12 F.3d at 798-99 (agency actions that obscure rather than provide information on the applicable procedures and that reflect "an attitude of concealment rather than enlightenment" do not meet the basic demands of due process); see also Ramirez v. United States,

767 F. Supp. 1563, 1570 (M.D. Fla. 1991) (where government actually knows citizen is contesting forfeiture, proceeding with

administrative forfeiture violates due process).  Our conclusion is consistent with our In re Harper decision, where the petitioning citizen simply ignored a subsequent notice of seizure and made no attempt to oppose the forfeiture.[6]  835 F.2d at 1273.  Here, it was the DEA that ignored the Muhammeds, not the contrary.

Criminal charges have never been brought against the Muhammeds.  The facts alleged by the government to discredit the Muhammeds are spare indeed.  The government points out that Mr. and Mrs. Mohammed had been married only three months but already had a two-month old son.  This information may be of prurient interest, perhaps, but is wholly immaterial.  The government further refers to the drug dog's alert to the cash.  However, it is well-established that an extremely high percentage of all cash in circulation in America today is contaminated with drug-residue.  See, e.g., United States v. $5,000, 40 F.3d 846, 848-50 (6th Cir. 1994).  The fact of contamination, alone, is virtually meaningless and gives no hint of when or how the cash became so contaminated.  Finally, the government lamely points to events five months after the seizure, when Leo Muhammed was again stopped in the St. Louis airport.  He had allegedly "discarded" a ticket not in his name before being stopped, and was found to have 12.7 grams of marijuana on his person.  Even more damningly, in the eyes of the government, receipts for the purchase of fast food and clothing were found in his pockets despite his claim of unemployment since the DEA's prior cash seizure.

We are therefore faced with a seemingly baseless government seizure of its citizens' cash currency.  Because of, and with

_____

[6]In re Harper did not address the issue of the adequacy of the DEA's forfeiture notice to a party who is already in district court contesting the seizure.  835 F.2d at 1273.

actual notice of, the Muhammeds' evident confusion, the DEA administratively forfeited at least $70,990 of the cash.  We

realize that the war on drugs has brought us to the point where the government may seize up to $500,000 of a citizen's property, without any initial showing of cause, and put the onus on the citizen to perfectly navigate the bureaucratic labyrinth in order to liberate what is presumptively his or hers in the first place. See 19 U.S.C. §§ 1607-09, 1615. Should the citizen prove inept, the government may keep the property, without ever having to justify or explain its actions. 19 U.S.C. § 1609. Because the courts have little authority to review the merits of an administrative forfeiture directly,[7] it is all the more important that the citizen be adequately apprised of exactly what he or she needs to do to regain his or her property. Although some case law indicates that initiation of administrative forfeiture may successfully oust a citizen's pending motion for return of the property until the administrative procedures have been complied with, the DEA notice is not at all clear on this point. We conclude, therefore, that here, at least, where the agency was on notice that the Muhammeds were confused as to this point and not only in need of, but requesting, clarification, the agency had a duty to refrain from further action until tender of the requested information. Thus, the administrative forfeiture is void because of inadequate notice given to the Muhammeds. Woodall, 12 F.3d at 795.

Our finding is reinforced by the basic principle that forfeitures are disfavored and should only be enforced when within both the letter and the spirit of the law. United States v.

---

[7]Had the failure to file the cost bond permitted the administrative forfeiture in this case, besides a claim against their attorneys, the Muhammeds may have had their day in court through a Bivens action contesting the constitutionality of the actions of the agents seizing the cash, the Muhammeds, or both. See Madewell v. Downs, 68 F.3d 1030 (8th Cir. 1995); Glasgow, 12 F.3d at 799.

Premises Known as 3639-2nd St., N.E., 869 F.2d 1093, 1098 (8th Cir. 1989) (R. Arnold, J., concurring).  Here, the agency's knowing

capitalization on the Muhammeds' confusion to avoid being put to its proof in a court of law runs very much counter to the spirit of forfeiture statutes, which are meant to divest the blameworthy, not the inept, of private property.  See id. (forfeiture statutes are not meant to divest citizens of private property without a substantial connection between the property and criminal activity).

In its order of dismissal, the district court also held that the Muhammeds' complaint was limited to the return of the $70,990, and did not encompass the $22,000.  The court based this ruling on the notice of seizure attached to the amended complaint which lists $70,990, and the amended complaint's citation of that notice's seizure number.  However, the original complaint included a DEA field receipt for the $22,000 seized from Mrs. Muhammed, and an affidavit complaining of that seizure.  The Muhammeds' resistance to the government's motion for dismissal raised the issue of the $22,000.  The government confirmed in its motion to dismiss that $22,000 was seized from Mrs. Muhammed, but does not further address that seizure.  Thus, we do not know whether that money has been forfeited, or, if so, what sort of notice was given.  (The record, as far as we can discern, contains only copies of the notice relating to the $70,990.  The $22,000 has apparently disappeared into thin air.)  Because the complaint, the attached receipts, and the Muhammeds' resistance to the motion to dismiss (with both seizure receipts attached) clearly put the seizure of Mrs. Muhammed's $22,000 in issue, and because the government has in no way accounted for that money, the district court erred in construing the Muhammeds' action to refer to only the seizure of the $70,990.

## III. CONCLUSION

-15-

We reverse the district court's dismissal of the Muhammeds' claim for the return of seized property as it relates to the $70,990 and remand for further proceedings consistent with this

opinion.  We also direct the district court to consider that part of the complaint which refers to the $22,000 seized from Mrs. Muhammed in those further proceedings.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting and concurring.

I concur in the court's disposition of this case insofar as it deals with the matter of Mrs. Muhammed's $22,000.  But, with respect, I disagree with the court that the notice to the Muhammeds concerning the manner in which they could contest the forfeiture proceeding was constitutionally infirm.  It was about as plain as it could have been and the Muhammeds simply failed to follow it.  Indeed, the Muhammeds never argued that the notice was in any way deficient.  Under these circumstances, the district court was quite correct in dismissing the Rule 41(e) proceeding.  See In re Harper, 885 F.2d 1273 (8th Cir. 1988).

The court sees fit to discuss the question of whether the money was in fact forfeitable, though that question is irrelevant to a resolution of the legal issue that the case presents.  The merits of the government's forfeiture case are not before us, and, in fact, we do not know what evidence the government would have produced had it been called on to present a case on the merits. The court evidently finds nothing suspicious about a woman having $22,000 stuffed in her girdle.  In any event, the court rehearses only part of the government's justification for seizing the currency, an account produced, evidently, by selecting certain allegations from the motion to dismiss that the government made in the district court.  The court does not mention that in that motion the government had maintained that Mr. Muhammed told DEA agents that he had only two thousand dollars on his person when he was interviewed (he had over $70,000), and that he did not even know the last name of his friends with whom he had recently driven from

-17-

Chicago to St. Louis.  Mrs. Muhammed, the government also alleged, had said that the money that she and her husband were carrying did

not belong to the Nation of Islam, and, indeed, admitted that it could have come from drug sales.  The court also omits to notice the government's allegation that when it interviewed Mr. Muhammed on a later occasion it was discovered that his ticket and boarding pass were in different names, neither of them Mr. Muhammed's.  But the most remarkable omission from the court's account of the government's story is Mr. Muhammed's evidently straight-faced assertion that the money had been made selling fish products and bean pies on behalf of the Nation of Islam.  While this explanation does not involve, I suppose, a physical impossibility, I offer the respectful observation that only the most extraordinarily gullible person would be inclined to accept it without at least a considerable amount of reflection.  All of this, as I have already said, is irrelevant in the present posture of the case.  My point is simply that if the merits were relevant, as the court evidently believes them to be, it is not manifest that a miscarriage of justice has occurred here.

I would therefore affirm the district court's judgment with respect to the plaintiffs' claim to the $70,000 in currency.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-19-