F I L E D
United States Court of Appeals
Tenth Circuit

MAR 11 1997

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

JOE EARL RODGERS,

       Defendant-Appellant.

No. 96-5205

Appeal from the United States District Court
for the N.D. Okla.
(D.C. No. 91-CR-23-E)

Submitted on the briefs:[*]

Stephen C. Lewis, United States Attorney, and Catherine Depew Hart, Assistant
United States Attorney, Tulsa, OK, for Plaintiff-Appellee.

Joe Earl Rodgers, Pro Se.

Before **BRORBY, EBEL** and **KELLY**, Circuit Judges.

**EBEL**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause therefore is ordered
submitted without oral argument.

Appellant Joe Earl Rodgers ("Rodgers") brought this action to set aside the administrative forfeiture of $30,006.25 in United States currency, $1,951.00 in United States Currency, a 1979 Corvette, a 1977 Corvette, and a 1984 Ford Econoline van. Rodgers challenges the forfeiture on the ground that the United States Drug Enforcement Administration (the "DEA") did not provide him with proper notice of the forfeiture proceedings. The district court denied Rodgers's *pro se* "Motion for Return of Property" and determined that the DEA's attempts to provide Rodgers with notice were reasonably calculated, under all the circumstances, to apprise him of the pendency of the forfeiture proceedings. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). We disagree and REVERSE the district court's order.[1]

## BACKGROUND

On February 16, 1991, local law enforcement officers in Oklahoma arrested Rodgers under state law for certain drug offenses and seized, *inter alia*, vehicles, currency, firearms, drug paraphernalia, knives, stereos, a surveillance camera, an answering machine, a typewriter, and a cellular phone from two of Rodgers'

---

[1] The district court granted appellant's request to proceed *in forma pauperis* on appeal. Appellant should note that because this appeal was filed after April 26, 1996, the recently enacted Prison Litigation Reform Act of 1995 ("PLRA") is applicable. Thus, petitioner will be assessed for his filing fee in accordance with the partial payment plan described in § 804(a) of PLRA. See PLRA § 804(a), 28 U.S.C.A. § 1915(b) (West Supp. 3 1996).

residences. Rodgers made bond and was released by Tulsa police, but he failed to appear at his trial date three days later. Rodgers remained a fugitive until August 17, 1991, when the United States Customs Service arrested him as he attempted to re-enter the United States from Mexico.

In the meantime, on March 8, 1991, federal law enforcement officers attempted to serve Rodgers with an arrest warrant issued pursuant to a federal indictment charging Rodgers with conspiracy to distribute cocaine. However, because Rodgers was a fugitive, the U.S. Marshal was unable to arrest Rodgers. Nonetheless, the federal authorities adopted for federal forfeiture many of the items seized by local law enforcement.[2] These items included: (1) $30,006.25 in United States currency; (2) $1,951.00 in United States currency; (3) a 1977 Chevrolet Corvette; (4) a 1979 Chevrolet Corvette; and (5) a 1984 Ford Econoline van.[3] (D.Ct. Order, at 4-5).

The DEA did not forfeit all of the adopted items in bulk. Instead, the DEA forfeited each item separately, and it attempted to provide notice as to each forfeiture separately. Before the forfeiture of each item, the DEA published once

---

[2] When local authorities voluntarily deliver seized property to the DEA, the DEA is said to "adopt" the property. 21 U.S.C. § 881 (1994 & Supp. 1996) grants the DEA jurisdiction to forfeit adopted property. See United States v. Woodall, 12 F.3d 791, 794 n.2 (8th Cir. 1993).

[3] The non-adopted items were forfeited by Pawnee and Tulsa County authorities pursuant to Oklahoma forfeiture procedures. Those forfeitures are not before us.

a week for three consecutive weeks a notice of seizure and of its intent to forfeit Rodgers's property in the USA Today, a newspaper of general circulation in the judicial district in which the processing for forfeiture was brought. The DEA also mailed to Rodgers a written notice of the seizure, as detailed below, together with information on the applicable procedures Rodgers had to follow to claim an interest in the property.

DEA first mailed a seizure notice with regard to the $30,006.25 in United States currency, and it mailed that notice to Joe Rodgers, 4923 S. Yorktown #38, Tulsa, Oklahoma, by certified mail. The post office attempted to deliver that notice on April 1, 1991 and again on April 6, 1991. These delivery attempts were unsuccessful and the letter was returned to the DEA unclaimed on April 17, 1991. The DEA administratively forfeited the $30,006.25 in United States currency on May 10, 1991.

The DEA next mailed a seizure notice with regard to the $1,951.00 in United States currency. The DEA again mailed its notice to the Yorktown address, and the post office attempted to deliver that notice on April 11, 1991 and April 15, 1991. The notice was returned to the DEA unclaimed on April 26, 1991, and the DEA forfeited the $1,951.00 in United States currency on May 24, 1991.

The DEA also mailed seizure notices concerning the seized Corvettes to the Yorktown address. The post office attempted to deliver those notice letters on April 12, 1991 and April 17, 1991, but again each letter was returned to the DEA unclaimed on April 28, 1991. The DEA forfeited the Corvettes on May 24, 1991.

Some three weeks after the post office returned to the DEA as unclaimed the notice letters concerning the first four items, the DEA mailed a seizure notice concerning the 1984 Econoline van to the Yorktown address. Not surprisingly, this notice also was returned unclaimed on June 1, 1991, after the post office unsuccessfully attempted to deliver the notice on May 16, 1991 and May 21, 1991. In addition, DEA mailed a notice to Joe Rodgers, 6650 N. Trenton, on May 20, 1991, but this letter was returned with the advisement that Rodgers had moved and left no forwarding address. The DEA forfeited the Econoline van on June 28, 1991.

## DISCUSSION

### I.     Forfeiture Procedures Generally

The DEA forfeited the seized items on the ground that they were used or acquired as a result of a drug-related offense. See 21 U.S.C. § 881(a)(4) (1994) (allowing forfeiture of vehicles) and 21 U.S.C. § 881(a)(6) (1994) (allowing forfeiture of currency). Section 881 incorporates the forfeiture procedures

provided in the Tariff Act of 1930, United States v. Woodall, 12 F.3d 791, 792 (8th Cir. 1993) (citing 21 U.S.C. § 881(d)), which require the government to publish a notice of seizure and of its intent to forfeit seized property once a week for three consecutive weeks in a newspaper of general circulation in the judicial district in which the forfeiture proceedings is brought. 19 U.S.C. § 1607(a) (1994); 21 C.F.R. § 1316.75(a) (1996).  In addition, the government must provide "[w]ritten notice of seizure together with information on the applicable procedures . . . to each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a) (1994).  Finally, the Constitution requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." United States v. 51 Pieces of Real Property, Roswell, N.M., 17 F.3d 1306, 1316 (10th Cir. 1994) (quoting Mullane, 339 U.S. at 314)).  After adequate notice is given, and if no party files a claim asserting an interest in the property within twenty days of publication, the DEA must declare the property forfeited. United States v. Clark, 84 F.3d 378, 380 (10th Cir. 1996) (citing 19 U.S.C. § 1609 (1994); 21 C.F.R. § 1316.77(b)).

Although Rodgers admits that he failed to file a claim asserting an interest in the seized property, Rodgers alleges that the DEA's attempts to provide him with notice of its intent to forfeit failed to satisfy statutory and due process

requirements; and, accordingly, the DEA administrative forfeiture should be vacated.  See Aero-Medical, Inc. v. United States, 23 F.3d 328, 331 (10th Cir. 1994).

We have jurisdiction under 28 U.S.C. § 1331 to review whether DEA's administrative forfeiture satisfied statutory and due process requirements.  Clark, 84 F.3d at 381.[4]  Moreover, Rodgers' status as a criminal fugitive during DEA's forfeiture proceedings does not "disentitle" him from the right to pursue civil relief in this court.  See Degen v. United States, 116 S.Ct. 1777, 1780-83 (1996) (holding that a court in a civil forfeiture suit is not allowed to enter judgment against a claimant merely because he is a fugitive from a related criminal prosecution).[5]

We review the district court's determination that the government employed means reasonably calculated to provide the claimant with actual notice for clear error.  Clark, 84 F.3d at 381 (citing 51 Pieces of Real Property, 17 F.3d at 1316.).

---

[4]  Although Rodgers brought his motion under Fed. R. Crim. P. 41(e), we have held that "'[w]here criminal proceedings against the movant have already been completed, a district court should treat a Rule 41(e) motion as a civil complaint [under 28 U.S.C. § 1331].'" Clark, 84 F.3d at 381 (quoting Onwubiko v. United States, 969 F.2d 1392, 1397 (2d Cir. 1992)).

[5]  Rodgers argues that his status as a state fugitive should not bear on his rights in a federal proceeding.  However, because Degen provides that even federal fugitives have rights in civil forfeiture proceedings, we need not address whether Rodgers was a state or federal fugitive.

## II.  DEA Compliance With Forfeiture Procedures

It is undisputed that the DEA's publications in <u>USA Today</u> satisfies the forfeiture statute's "notice by publication" requirement.  The <u>USA Today</u> is a newspaper of general circulation, and the DEA published its notice once a week for three consecutive weeks.  <u>See</u> 19 U.S.C. § 1607(a) (1994); 21 C.F.R. § 1316.75(a)(1996).  Thus, the only issue we address is whether the DEA's attempts to give Rodgers actual notice were sufficient.  We believe they were not.  Rodgers maintained three different residences, and yet, the DEA only mailed seizure notices to two of those residences.  Rodgers claims the DEA should have mailed him a seizure notice at the third residence and we agree.

For purposes of determining whether the government has made reasonable efforts to notify a claimant, we note that the government is not only chargeable with information it has within its possession but also with information it could have discovered by making reasonable efforts.  In <u>Clark</u> we explained that "[w]hen the government can reasonably ascertain the name and address of an interested party, due process requires the government to send 'notice by mail or other means as certain to ensure actual notice.'"  84 F.3d at 380 (quoting <u>Mennonite Bd. of Missions v. Adams</u>, 462 U.S. 791, 800 (1983)).

In this case, we charge the DEA with information concerning Rodgers provided in the local authorities' seizure records.  Where property is initially

seized by state authorities, and then turned over to the federal government for federal forfeiture of that property, it is reasonable to expect the federal government to obtain from the seizing authority whatever evidence it may have concerning the whereabouts of the defendant. Here, we believe that the record establishes that the DEA was aware of, or should reasonably have become aware of, three residences at which Rodgers kept his belongings.

First, Rodgers kept some belongings at 4923 Yorktown #38, Tulsa, OK, an apartment apparently leased by an indicted co-conspirator, Donald Lee Rogers, located above a night club in Tulsa which Rodgers used to own. The DEA concedes knowledge of the Yorktown address. The DEA mailed several notice letters to the Yorktown apartment, and the $30,006.25 in United States currency was seized from that address.

Second, Rodgers kept a cabin at 6650 N. Trenton, Tulsa, Oklahoma. The record indicates that the DEA also knew of the Trenton address because it mailed one notice letter to that address pertaining to the 1984 Econoline van. In addition, the list of seized items made by local law enforcement includes an electric bill receipt mailed to Joe Rodgers, 6650 N. Trenton, an automobile insurance form mailed to Joe Rodgers, 6650 N. Trenton, and a cellular phone application filled out under an apparently assumed name, Kenny Rodgers, 6650 N. Trenton.

However, the strongest evidence in the record suggests that Rodgers maintained his primary residence at a house owned by his mother in Terlton, Oklahoma, a town situated on the outskirts of Tulsa, in Pawnee County, Oklahoma. Inexplicably, the DEA never sent a notice letter to Rodgers at the Terlton address, although the record reveals that the DEA was aware of the Terlton address. The 1984 Econoline van was seized from Terlton and the "Notice of Seizure" the DEA mailed to the Trenton and Yorktown addresses indicates as much by listing "Terlton" as the "Seizure Place." Second, the list of items seized at the Terlton address by local law enforcement officers includes a water bill and a past due notice mailed to Joe Rodgers, Rt. 1, Box 267, Terlton; a collection of thirty-five bills and letters addressed to Joe Rodgers, Terlton; and a "paper license tag"[6] for the Econoline van issued to Joe Rodgers, Terlton.

Finally, the United States describes Joe Rodgers' Terlton residence as "the residence of Joe Rodgers" in its brief (Govt. Brief, at 4; Govt. Ex. 27 -- "Application for Order of Seizure"); the Pawnee County District Attorney described the Terlton address as "the Joe Rodgers residence" in state forfeiture proceedings, (Govt. Ex 27 -- "Application for Order of Seizure"); and, in an affidavit prepared for those proceedings, the Undersheriff of Pawnee County

_____

[6] It is not clear from the record what a "paper license tag" is. Presumably, it is a temporary form of vehicle registration.

described the Terlton address as "under the control and maintained as residence by one Joe Rodgers." (Id.)[7]

We recognize that in today's transient society the government often will have difficulty determining where to mail its notice letters.  We believe, however, there are several factors to which the government can look in deciding whether to mail its notice letters to a particular address.  Factors to consider include:  (1) whether there is physical evidence linking the claimant to the address, such as the storage of the claimant's personalty; (2) whether there are other indicia of residency, such as the receipt of mail, the listing of a phone number, or the payment of utilities; (3) whether the claimant has a real property interest in the property represented by the address, either a leasehold or ownership interest; (4) whether there is any direct evidence linking the claimant to the address, such as informant testimony or eyewitness observation; (5) whether there is evidence suggesting that a notice letter mailed to the address will be forwarded to the claimant; and (6) whether there are alternative methods of providing actual notice

---

[7] Although neither the government, the district attorney, nor the undersheriff specifically mentioned "Terlton," it is clear from the record that the residence to which they refer is the Terlton residence.  The United States refers to the  residence as the one from which certain firearms were seized, and the district attorney notes that that residence is located in Pawnee County.  (Govt. Exhibit #27).  The Undersheriff provides a more precise description by noting that the "residence [is] located in Pawnee County. Section 28, Township 20, Range 8, W1/2 - E1/2 -W1/2 - N1/4."  (Govt. Exhibit #27). We take judicial notice of the fact that Terlton is in Pawnee County, whereas Rodgers' two other addresses are in Tulsa County.

that may be available to the government. These factors are neither exhaustive nor mandatory; however, they serve as guideposts in a murky terrain.

Applying the factors described above, we believe that the DEA acted unreasonably when it failed to mail a notice letter to Rodgers at his Terlton address. First, there was evidence suggesting that Rodgers stored personalty at the Terlton address. Specifically, Rodgers' Econoline van and several of his guns were seized from there. Second, Rodgers paid the utilities for the Terlton address and received mail there. Third, both the DEA and the local seizing authority have acknowledged in various of their papers that Rodgers maintained a residence at Terlton.

We recognize that Rodgers' Tulsa addresses also satisfied some of the factors discussed above; however, the Terlton address was the most reasonable address to which to mail a notice letter. The government primarily relied on its mailings to the Yorktown apartment to give Rodgers notice, but the only evidence in the record which suggests that Rodgers once lived at the Yorktown apartment is the fact that some of his possessions were seized from there. The apartment was apparently leased by one of Rodgers' employees and there is no indication that Rodgers paid utilities for the Yorktown apartment or that he received mail there.

Moreover, even assuming that the DEA properly sent notice letters to Rodgers' Tulsa addresses, those notice letters were all returned as undelivered, thereby informing the DEA that they were not adequate to provide actual notice. As we made clear in Aero-Medical, Inc. v. United States, 23 F.3d 328 (10th Cir. 1994), the DEA must take reasonable steps to locate a civil claimant when its initial mailings are returned unclaimed.

In Aero-Medical, the DEA seized an airplane allegedly used in connection with drug distribution activities and then forfeited that airplane after no one claimed an interest in it. Id. at 329. The DEA had published notice for three consecutive weeks in *USA Today* and it mailed a notice letter to the claimant at his business address, as kept in FAA records. The notice letter was returned with the advisement that claimant has moved and left no forwarding address. Id. In addition, DEA mailed notice to the home of the claimant's predecessor in interest, but that notice was also returned unclaimed.

We vacated the DEA's administrative forfeiture after determining that the government had not employed means reasonably calculated to provide the claimant actual notice of the proceedings. Id. at 331. We noted that "[t]he DEA was not only aware that the [business] address was not a current business address for plaintiff, but was also aware of the identity of plaintiff's registered agent." Id. at 330. Moreover, "[p]laintiff's current address was easily ascertainable, not

requiring extra inquiry, investigation, or effort, and an additional notice attempt would not have placed an undue burden on the DEA." Id. at 330-331 (citing Schroeder v. City of New York, 371 U.S. 208, 212-13 (1962)).

Similarly in this case, the DEA was aware that the Yorktown address was not being used by Rodgers when it mailed its notice letters there. In its brief, the government does not dispute that it knew the Yorktown address was invalid; it only claims that it had no other address to which it could have mailed a notice letter. (Govt. Brief, at 8). The record reveals, however, that the DEA did have Rodgers' Terlton address, or at least that "[Rodgers' Terlton] address was easily ascertainable, not requiring extra inquiry, investigation, or effort, and an additional notice attempt would not have placed an undue burden on the DEA." Aero-Medical, 23 F.3d at 330-331. We hold that it was unacceptable for the DEA to rely upon notice by publication while failing to use the information it possessed, or should have possessed, from the beginning of the forfeiture process to notify Rodgers. See Id. at 331(finding it unacceptable for the DEA to rely upon notice by publication while failing to use information it possessed to notify claimant) (citing Mennonite Bd. of Missions, 462 U.S. at 800); see also Woodall, 12 F.3d at 794-95 (vacating a DEA administrative forfeiture where the government knew the claimant's current address, but mailed notice letters to other invalid addresses).

We recognize that Rodgers' fugitive status is also a factor to be considered in determining what notification steps are reasonable. However, the DEA cannot rely upon a claimant's fugitive status as an excuse for failure to give notice that might reasonably result in actual notice to the fugitive. The Supreme Court has determined that a criminal fugitive has the right to participate in civil forfeiture proceedings, see Degen, 116 S.Ct. at 1780-83, and the government threatens to eviscerate that right through the back door when it provides inadequate notification to fugitives. Although here there is the possibility, because of Rodgers' fugitive status, that a notice mailed to the Terlton address might also have been returned, there are adequate indicia that Rodgers had been using the Terlton address as a residence. On this record, it was unreasonable not to attempt to give notice to Rodgers at the Terlton address.

Our holding today is consistent with our decisions in United States v. Clark, 84 F.3d 378 (10th Cir. 1996) and United States v. 51 Pieces of Real Property, Roswell, N.M., 17 F.3d 1306 (10th Cir. 1994). In Clark, we upheld an administrative forfeiture where the FBI sent by return-receipt, certified mail, a notice letter to the claimant at his address in jail. 84 F.3d at 381. Although the letter was delivered to the jail, the claimant claimed he should have been served personally because "'most of the time a certified letter is never received by the person who is incarcerated.'" Id. (quoting claimant) (internal punctuation

omitted). We held that the claimant had "not shown the sort of exceptional circumstances that would have required the FBI to employ a means other than certified mail." Id.

In this case, Rodgers is not asserting that the DEA should have employed means other than certified mail; he is only claiming that the DEA should have mailed its certified letter to a valid address when it had within its possession information concerning that address. Moreover, the DEA's mailings to other addresses were returned unclaimed, whereas the FBI's mailings in Clark were successfully delivered. Thus, unlike the government in Clark, the DEA in this case knew that Rodgers did not receive notice of the pending forfeitures.

In 51 Pieces of Real Property, the government mailed a notice letter to the claimant in care of a third party at an invalid address in LaJolla, California, and it also mailed a notice letter to the claimant's alter-ego at another address. 17 F.3d at 1316-17. We upheld the forfeiture because although the letter mailed to the LaJolla address was returned unclaimed, the letter mailed to the claimant's alter-ego was successfully delivered. We noted that had the government only sent notice to the LaJolla address, "we might be inclined to agree with [the claimant] that the government's actions were not reasonably calculated to give [the claimant] actual notice of the forfeiture proceedings." Id. at 1317. In this case,

the government only sent notices to addresses determined to be invalid, and thus, we confront this factual scenario.

With regard to every seized item except the van, the government concedes that it mailed notices to an address at which it knew Rodgers could not be reached. Thus, Aero-Medical directly addressed Rodgers' claim as to the United States currency and the Corvettes when it held "[i]t is unreasonable for the government to ignore information in its possession and deliberately mail notice to an invalid address." 23 F.3d at 330 (citing Robinson v. Hanrahan, 409 U.S. 38, 40 (1972) (per curiam) (finding a Mullane violation where the government mailed notice of a forfeiture proceeding to the claimant's parent's address when the government knew the claimant was not at the address, and knew he could not get to that address because of his incarceration)); accord Torres v. $36,256.80 U.S. Currency, 25 F.3d 1154, 1161 (2d Cir. 1994).

Whether the government took reasonable efforts to give notice of the van's seizure and pending forfeiture is more complicated because in addition to mailing notice letters to the Yorktown address, an address the DEA knew was invalid, the government also mailed a notice letter to Joe Rodgers, 6650 N. Trenton. The record does not reveal whether the government knew that 6650 N. Trenton was an invalid address when it mailed a notice letter there. However, the government certainly knew the Trenton address was invalid when the letter was returned with

the advisement that Rodgers had moved, and we believe "[i]t was unreasonable for the DEA to ignore its discovery that [Rodgers] had not received the original mailed notice." Montgomery v. Scott, 802 F. Supp. 930, 936 (W.D.N.Y. 1992).

"[A]fter the DEA discovered that [Rodgers] had not received the notice it sent . . ., it should have taken additional steps to notify him," id., such as mailing a notice letter to his Terlton address. See also Torres, 25 F.3d at 1161 (2d Cir. 1994) (vacating an administrative forfeiture where the mailed notice was returned undelivered, where the government knew the claimant was in government custody, and where the government took no efforts to locate the claimant). In this case, the Econoline van was seized from the Terlton address, the DEA knew Rodgers maintained a residence there, and the DEA's mailings to other addresses were returned undelivered; thus, it was unreasonable for the DEA not to mail a notice letter concerning the seizure of the Econoline van to the Terlton address.

Finally, the government does not dispute Rodgers' claim that he did not have actual notice of the forfeiture proceedings. This fact distinguishes Rodgers from the claimant in 51 Pieces of Real Property, who "never denied receiving actual notice of the forfeiture proceedings and of the steps it should take to defend against those proceedings," 17 F.3d at 1317, but only "argued that the government did not send notice to it at the proper address." Id.; see also Sarit v. United States Drug Enforcement Admin., 987 F.2d 10, 15 n.3 (1st Cir.), cert

- 18 -

denied, 510 U.S. 888 (1993) (noting that the claimant had actual notice of the forfeiture proceedings, notwithstanding the claim that the DEA did not use reasonable efforts to give the claimant notice, in upholding an administrative forfeiture).

## CONCLUSION

Because we find it "unacceptable for the DEA to rely upon notice by publication while failing to use the information it possessed from the beginning of the forfeiture process to notify plaintiff," Aero-Medical, 23 F.3d at 331, we REVERSE the judgment of the district court and REMAND the case with instructions to vacate the DEA administrative forfeitures.