**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 29 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ALL MONIES FROM ACCOUNT NO.
PO-204,675.0, FORMERLY HELD AT
THE SWISS BANK CORPORATION OF
ZURICH, SWITZERLAND; AND
ACCOUNT NO. 01327947-001.1.840,
FORMERLY HELD AT THE BANK VON
ERNST UND CIE, PREVIOUSLY WPE
WIRTSCHAFTSUND PRIVATBANK,
ZURICH, SWITZERLAND, IN THE
NAMES OF SOMATERIA
FOUNDATION AND FINANCIERA
EURO-AMERICANA CORPORATION,

    Defendants,

SOMATERIA FOUNDATION;
FINANCIERA EURO-AMERICANA
CORPORATION; JORGE HUGO REYES
TORRES; DAYRA MARIA LEVOYER
JIMENEZ,

    Claimants-Appellants.

No. 97-1250
(District of Colorado)
(D.C. No. 93-Z-1652)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **HOLLOWAY,** and **MURPHY**, Circuit Judges.

In this civil forfeiture proceeding, Somateria Foundation ("Somateria"), Financiera Euro-Americana Corp. ("Financiera"), Jorge Hugo Reyes Torres ("Reyes Torres"), and Dayra Maria Levoyer Jimenez ("Levoyer Jimenez") (collectively "Claimants") appeal the district court's denial of their Motion to Set Aside Entry of Default and Default Judgment ("Motion to Set Aside") and motion to reconsider. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court affirms.

## BACKGROUND

The United States filed the underlying civil forfeiture action on August 4, 1993. In its Verified Complaint for Forfeiture *In Rem* ("Verified Complaint"), the United States alleged that the funds in two defendant bank accounts were the proceeds of drug trafficking and money laundering activities conducted by the Reyes Torres family of Ecuador.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

A Notice of Arrest and Procedure ("Notice of Arrest") was filed on August 17, 1993. That same day, copies of the Notice of Arrest, the Verified Complaint, an Order for Arrest of Property *In Rem*, and a Warrant for Arrest of Property *In Rem* were sent, by registered mail, to Claimant Somateria, at both a Liechtenstein address and in care of the Swiss Bank Corporation in Zurich; to Claimant Financiera, at both a British Virgin Islands address and in care of the Bank von Ernst and Cie in Zurich; and to Claimant Reyes Torres at an Ecuador prison. Additionally, the government published notice of the seizure and pending forfeiture of the two defendant accounts in *The Denver Post* on August 11, 18, and 25, 1993 and September 1, 1993. According to the published notice, the deadline for filing a claim was 10 days after "first publication" of the notice.

Claimants did not file a claim or answer and on September 14, 1993, the government filed a Motion for Default Judgment and Final Order of Forfeiture. The district court granted the motion and on October 25, 1993, the court entered a Default Judgment and Final Order of Forfeiture. An Amended Judgment was entered on October 28, 1993. The total amount forfeited was $11,499,068.34.

On October 21, 1994, Claimants filed a Motion to Set Aside Entry of Default and Default Judgment ("Motion to Set Aside"). On December 1, 1994, the government filed a response to Claimants' motion. On December 12, 1994, Claimants filed a motion requesting leave to file a reply brief to the government's

response to the Motion to Set Aside or, in the alternative, requesting a hearing. On December 15, 1994, the district court entered an order denying Claimants' Motion to Set Aside without ruling on Claimants' motion requesting leave to file a reply brief. Claimants subsequently filed a Motion for Reconsideration of Denial of Claimants' Motion to Set Aside Entry of Default and Default Judgment ("Motion for Reconsideration"), which the court denied by minute order.

Claimants appealed the district court's denial of their Motion to Set Aside. In an unpublished disposition, this court reversed the district court's denial of Claimants' Motion to Set Aside, holding that the district court should have ruled on Claimants' motion to file a reply brief before it ruled on the merits of the Motion to Set Aside. *See United States v. All Monies from Account No. PO-204,675.0*, No. 95-1095, 1996 WL 375393, at *2-3 (10th Cir. July 5, 1996). This court therefore remanded the case "with direction that the district court, after hearing, consider, and rule on, claimants' motion to file a reply brief before ruling on the motion to set aside." *Id.* at *3.

On remand, the district court granted Claimants' motion requesting leave to file a reply brief. A hearing was conducted on May 9, 1997. At the conclusion of the hearing, the district court granted Claimants' Motion to Reconsider, but again denied Claimants' Motion to Set Aside as untimely. This appeal followed.

-4-

On appeal, Claimants allege that (1) the default judgment is void as to Claimant Levoyer Jimenez because she was not mailed notice; (2) the judgment is void because the notice mailed to the other Claimants was deficient in that it failed to provide enough information to enable Claimants to determine the deadline for filing a claim; and (3) the district court abused its discretion by denying Claimants' Motion to Set Aside as untimely.

## NOTICE AS TO CLAIMANT LEVOYER JIMENEZ

Claimant Levoyer Jimenez contends the default judgment is void as to her because the government's failure to mail her notice of the forfeiture proceedings violated her due process rights.[1] It is undisputed that Levoyer Jimenez was not mailed notice of the forfeiture proceeding at the Ecuador prison where she was incarcerated at all relevant times. The government argues, however, that reasonable notice was provided to Levoyer Jimenez through Somateria.

Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also United States v. Rodgers*, 108 F.3d 1247, 1250 (10th Cir. 1997). When the name and address of

---

[1] Claimant Levoyer Jimenez is the common-law wife of Claimant Reyes Torres.

an interested party are reasonably ascertainable, due process requires the government to send "[n]otice by mail or other means as certain to ensure actual notice." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983); *see also Rodgers*, 108 F.3d at 1251. "Due process does not require, however, that the interested party actually receive notice." *United States v. 51 Pieces of Real Property*, 17 F.3d 1306, 1316 (10th Cir. 1994). "So long as the government 'acted reasonably in selecting means likely to inform [the] persons affected, . . . then it has discharged its burden.'" *Id.* (alterations in original) (quoting *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)).

This court reviews due process issues which call for legal conclusion *de novo*. *See United States v. Clark*, 84 F.3d 378, 381 (10th Cir. 1996). Whether the government used means that were reasonably calculated to provide actual notice, however, is a factual determination this court reviews for clear error. *See id.*

Claimant Levoyer Jimenez does not contend that the money from either account was in her name, but instead argues that she was entitled to notice of the forfeiture proceeding because she was both an authorized signer and beneficiary of one of the two forfeited accounts, the Somateria account.[2] Levoyer Jimenez

---

[2]According to Claimants, the Somateria account was managed by Somateria for the benefit of Reyes Torres, Levoyer Jimenez, and their four children.

asserts that because the government had knowledge of her whereabouts, it was required to mail notice directly to her.

Under the particular facts of this case, we reject Claimant Levoyer Jimenez's contention that the government was required to mail notice directly to her. To the extent that Levoyer Jimenez was an interested party, the government discharged its burden of providing her notice. The government mailed notice to Claimant Somateria, who was the owner of the Somateria account at the time of the seizure. Notice to Somateria was mailed both to the Liechtenstein law firm, which managed Somateria's affairs, and to the Swiss bank, which held the funds. Levoyer Jimenez testified that she executed an agreement with the Liechtenstein law firm giving individuals at the firm the power to act on her behalf in all matters related to the Somateria Foundation. Under these circumstances, notice to Somateria at the Liechtenstein law firm, which had power of attorney to act on Levoyer Jimenez's behalf, was reasonably calculated to provide Levoyer Jimenez actual notice of the proceeding.[3]

---

[3]In Claimants' Motion to Set Aside, Claimants acknowledge that Dr. Wiederkehr, from the firm of Dr. Dr. Batliner & Partenr, was given "mandate" authority by Levoyer Jimenez to manage Somateria's affairs. The dissent argues, nevertheless, that notice to the Batliner law firm in Liechtenstein was not effective as to Levoyer Jimenez because that notice took place after Batliner had withdrawn from representation of Somateria. *See* Dissenting Op. at 2-3 & n.2 (citing affidavit of Reyes Torres). It appears from Levoyer Jimenez's affidavit, however, that she had a relationship with the Batliner firm independent of

(continued...)

Based on the above, we conclude the means utilized by the government to provide notice to Claimant Levoyer Jimenez were "as certain to ensure actual notice" as mailing notice to her at the Ecuador prison,[4] especially in light of her

---

[3](...continued)
Batliner's representation of Somateria. In her affidavit, Levoyer Jimenez states as follows:

> I am the legally authorized agent of the Somateria Foundation. I am one of the founders of this foundation, along with the economist Laura Mirella Santacruz Delgado, who helped me create the foundation. Mrs. Santacruz Delgado and I are the only persons authorized to sign any action related to the Somateria account. . . . Because I do not live in Europe, it was necessary for me to sign a Mandate Agreement or Power of Attorney with the law firm of Dr. Herbert Batliner, Vaduz, Liechtenstein, so that he could act for me in all matters related to the foundation. Therefore, in May 1990, I signed a Mandate Agreement granting full power and authority to Dr. Batliner's firm to sign for me on behalf of Somateria.

This testimony appears to represent a relationship independent of Batliner's relationship with Somateria itself. Accordingly, the ambiguous language cited by the dissent in the Reyes Torres affidavit that "Batliner's officer withdrew representation of the Somateria Foundation" in 1992 says nothing of the status of the relationship between Batliner and Levoyer Jimenez. Furthermore, there is no indication in Levoyer Jimenez's affidavit that Batliner ever terminated its relationship with her. In light of these circumstances, the district court did not err in declining to grant extraordinary relief under Rule 60(b). *See FDIC v. United Pacific Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir. 1998) (holding that although district courts have substantial discretion, Rule 60(b) relief is "extraordinary" and should only be granted in exceptional circumstances).

The dissent further asserts that it is impermissibly speculative to assume the Batliner firm would notify Levoyer Jimenez of the action because her name was not on the caption of the case or the certificate of service. In fact, it is not remotely speculative the Batliner firm would inform Levoyer Jimenez of the case in light of its relationship with her and the fact that she is one of only two authorized signatories for the actions of the Somateria Foundation.

[4]Claimants cite *United States v. Woodall*, 12 F.3d 791, 794 (8th Cir. 1993),

(continued...)

and Reyes Torres' testimony that mail sent to them in prison was not always delivered. This court therefore rejects Levoyer Jimenez's contention that the judgment is void because she did not receive adequate notice of the forfeiture proceeding.

## ADEQUACY OF NOTICE

Claimants Somateria, Financiera, and Reyes Torres argue that the Notice of Arrest mailed to them was inadequate because it did not specify a deadline for filing a claim and thus violated their due process rights. Alternatively, they argue that because the notice published in *The Denver Post* stated that all claims must be filed within ten days after the "first publication" of the notice and the date of

---

[4](...continued)
for the proposition that when government officials have actual knowledge of an interested party's whereabouts, due process requires notice to be sent to the individual at that address. The facts of *Woodall*, however, are distinguishable from those in the present case. In *Woodall*, the claimant alleged that the government sent him notice of the forfeiture proceeding at his home address and at jail. *See id.* The district court, however, had released him on bond to a different residence, which he contended was known to the government. *See id.* The government did not mail notice to the claimant at that address, nor did it mail notice to his attorney. *See id.* The *Woodall* court held that if the facts were as alleged by the claimant, the government failed to provide him adequate notice and the forfeiture was therefore void. *See id.* at 795. Unlike *Woodall*, in the present case, the government did not mail notice to an address at which the government was aware Levoyer Jimenez no longer resided. Instead, the government mailed notice to a law firm which Levoyer Jimenez had empowered to act on her behalf in all matters related to Somateria. The issue in the present case, whether notice to the firm was reasonably calculated to provide notice to Levoyer Jimenez, is thus different from the issue addressed by the *Woodall* court.

first publication was August 11, 1993, the deadline for filing a claim was August 21, 1993. They therefore contend that the Notice of Arrest mailed to them on August 17, 1993 was untimely because it did not provide them with adequate time to file a claim before the August 21, 1993 deadline.

The Notice of Arrest mailed to Claimants on August 17, 1993 stated: "All persons claiming the above-described property must file their claims, pursuant to Supplemental Rule C(6), . . . within ten days after publication of this Notice, or within ten (10) days of actual notice of this action, whichever occurs first, or within such additional time as the Court may allow." Claimants argue that it was impossible to tell from the Notice of Arrest and other documents mailed to them the actual deadline for filing a claim because the documents did not indicate the date notice was published. The Notice of Arrest, however, clearly provided Claimants with an outside deadline. Claimants knew from the Notice of Arrest that while the actual deadline for filing a claim might be earlier, any claim filed more than ten days after they received the Notice of Arrest would not have been timely. Despite Claimants' knowledge that, absent an extension of time granted by the court, they had at most ten days after receiving the Notice of Arrest to file a claim, Claimants took no action during this time period.[5] Because Claimants

---

[5]Because Claimants knew the time period for filing a claim would expire ten days from their receipt of the Notice of Arrest, yet took no action to file a
(continued...)

took no action to file a claim within this time period, Claimants were not injured by any alleged inadequacy of the Notice of Arrest. This court thus rejects Claimants' challenge to the adequacy of the notice.

This court similarly rejects Claimants' challenge to the timeliness of the notice mailed to them. The district court found that the "ten days after publication" specified by the Notice of Arrest ran from the last date of publication, September 1, 1993, and thus concluded that Claimants were required to file a claim within ten days of receiving the Notice of Arrest, or by September 11, 1993, whichever occurred first. Claimants, however, maintain that the "ten days after publication" ran from the first date of publication, August 11, 1993, and therefore Claimants were required to file a claim by August 21, 1993, even though the Notice of Arrest was not mailed to them until August 17, 1993.

---

[5](...continued)
claim within that time period, this case is distinguishable from *Glasgow v. DEA*, 12 F.3d 795 (8th Cir. 1993). In *Glasgow*, the Eighth Circuit held that a notice which provided that a claim of ownership "must be filed within *twenty (20) days* of the *first date* of publication of the notice of seizure in the Wednesday edition of *USA Today*" was inadequate because it failed to specify a deadline for filing the claim. *Id.* at 797-99. The claimant in *Glasgow* missed the first publication of the notice and filed a claim shortly after the twenty-day period had expired. *See id.* at 797. Unlike the claimant in *Glasgow*, in this case Claimants had an outside deadline for filing the claim, ten days after their receipt of the Notice of Arrest, yet Claimants chose not to file a claim. Claimants' reliance on *Glasgow* is therefore misplaced.

We need not address whether the "ten days after publication" specified by the Notice of Arrest ran from the first or last date of publication because it is undisputed that Claimants did not file a claim within ten days after receiving the Notice of Arrest. Had Claimants filed a claim within ten days of their receipt of the Notice of Arrest but after August 21, 1993, it would be necessary for this court to determine the applicable deadline and, in light of that deadline, determine whether the Notice of Arrest mailed to Claimants was timely. In this case, however, because Claimants did not file a claim within the ten day period following their receipt of the Notice of Arrest, Claimants suffered no injury from the alleged untimeliness of the Notice of Arrest. This court therefore rejects Claimants' contention that their due process rights were violated by the untimeliness of the Notice of Arrest.

## TIMELINESS OF CLAIMANTS' MOTION TO SET ASIDE

Finally, Claimants contend the district court erred in denying as untimely their Motion to Set Aside Entry of Default and Default Judgment, filed pursuant to Federal Rules of Civil Procedure 55(c)[6] and 60(b). Claimants Reyes Torres and Levoyer Jimenez argue that because they were imprisoned in Ecuador, were not able to communicate freely with the outside world, and did not have funds to

---

[6]Federal Rule of Civil Procedure 55(c) provides: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."

pursue their claim due to the seizure of their assets, they were justified in filing their Motion to Set Aside on October 21, 1994, nearly a year after entry of the default judgment.

This court reviews the district court's denial of Claimants' Rule 60(b) Motion to Set Aside for an abuse of discretion. *See United States v. Timbers Preserve, Routt County, Colo.*, 999 F.2d 452, 454 (10th Cir. 1993). We will reverse the district court's denial of Claimants' motion "only if we find a complete absence of a reasonable basis and are certain that the district court's decision is wrong." *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1147 (10th Cir. 1990). In determining whether the district court abused its discretion, this court is "mindful that '[r]elief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances.'" *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 576 (10th Cir. 1996) (alteration in original) (quoting *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990)).

Claimants' Motion to Set Aside sought relief from the default judgment pursuant to Rule 60(b)(1) and (3), which provide that "[o]n motion and upon such terms as are just," a court may set aside a final judgment due to "mistake, inadvertence, surprise, or excusable neglect" or due to "fraud . . . ,

misrepresentation, or other misconduct of an adverse party."[7] Fed. R. Civ. P. 60(b)( 1), (3). Federal Rule of Civil Procedure 60(b) requires that a motion seeking relief from judgment on the above grounds "shall be made within a reasonable time, and . . . not more than one year after the judgment, order, or proceeding was entered." A Rule 60(b) motion is not made within a "reasonable time" and therefore timely merely because it is filed within one year of the judgment. *See White v. American Airlines, Inc.*, 915 F.2d 1414, 1425 (10th Cir. 1990). Instead, whether a Rule 60(b) motion is filed within a reasonable time "depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981); *see also Planet Corp. v. Sullivan*, 702 F.2d 123, 126 (7th Cir. 1983); *Atchison, Topeka & Santa Fe Ry. Co. v. Matchmaker, Inc.*, 107 F.R.D. 63, 66 (D. Colo. 1985).

---

[7]Claimants' Motion to Set Aside also sought relief pursuant to Rule 60(b)(4), which provides that a court may set aside a final judgment if "the judgment is void." Fed. R. Civ. P. 60(b)(4). Claimants' request for relief under Rule 60(b)(4) stems solely from their assertions that (1) proper notice was not provided to Levoyer Jimenez and (2) the notice provided to Somateria, Financiera, and Reyes Torres was untimely and inadequate. This court has already rejected these arguments on the merits and, therefore, we do not address Claimants' request for relief pursuant to Rule 60(b)(4) in this section of our opinion.

In denying Claimants' Motion to Set Aside, the district court relied on the fact that the U.S. Attorney's Office had been contacted by attorneys and agents who inquired about the forfeiture at the request of Reyes Torres family. The court reasoned that "the fact that the attorneys are there makes it very clear . . . that these claimants . . . knew very well that these funds were being forfeited, and the claims were against the funds, so they certainly could have done something, even asked for a continuance." The court determined that Claimants "sat on their rights" by taking no action despite knowledge of the forfeiture and the Motion to Set Aside therefore was "not filed timely as required by Rule 60(b)."

The record indicates the Reyes Torres family requested that Attorney Irwin Lichter of Florida inquire into the status of the forfeiture proceedings. In response to the request, Lichter contacted Attorney Richard Tegtmeier of Colorado in February 1994. Tegtmeier, in turn, contacted James Russell of the U.S. Attorney's Office. Tegtmeier testified that Russell described the international scope of the various civil forfeiture and criminal proceedings involving the Reyes Levoyer family and indicated that it might be necessary for an attorney involved in the case to conduct up to fifty depositions at locations in Europe and South America. Tegtmeier then relayed this information to Lichter and discussed a potential retainer. Lichter testified that he attempted to convey the information he had obtained about the forfeiture proceedings from Tegtmeier

to Reyes Torres through an intermediary, but was uncertain as to whether Reyes Torres ever received the information.

Additionally, Jose Ontaneda of Chicago, a personal friend of Reyes Torres, testified that at Reyes Torres' request, he traveled to Denver to visit the U.S. Attorney's Office "to find out information about a case involving money taken from Swiss bank accounts." According to Ontaneda's testimony, however, his trip to Denver took place in March 1993, before this present case was filed. It is therefore unclear from the record whether the accounts involved are the same as those in the present case. Ontaneda also testified that while in Denver, he received a visit from three men who identified themselves as being with the DEA and advised him not to get involved with the case. Ontaneda further testified that in August or September 1993, he contacted Attorney Christopher Miranda about representing Reyes Torres, but was unaware whether Miranda ever contacted Reyes Torres. Finally, Ontaneda testified that he sent Reyes Torres a copy of the Denver yellow pages listing for attorneys.

The original district court order denying Claimants' Motion to Set Aside overstated the amount of contact between the U.S. Attorney's Office and individuals representing Reyes Torres when it stated that the government had presented evidence "that it ha[d] been contacted by numerous attorneys and agents acting on the claimants' behalf." The evidence, however, clearly shows

that Reyes Torres was aware of the forfeiture proceedings and had at least some

contact with individuals in the United States. In light of this evidence, we cannot

say that there was no reasonable basis for the district court's decision that

Claimants' Motion to Set Aside was untimely.[8] On remand, the district court

---

[8]Claimants rely on *United States v. $48,595.00*, 705 F.2d 909 (7th Cir. 1983), in arguing their Motion to Set Aside was timely filed. In *$48,595.00*, the Seventh Circuit concluded that the claimant's Rule 60(b) motion, filed 49 weeks after entry of the default judgment, was timely. *See id.* at 912-13. In that case, the government seized money from claimant John Weed and his brother, both of whom had just arrived in the United States from Germany. *See id.* at 910-11. The money was seized because Weed and his brother failed to declare the money on a customs declaration form. *See id*. After his arrest, Weed returned to Germany on a personal recognizance bond and was subsequently arrested and incarcerated in Germany on a separate offense. *See id.* at 911. The government commenced forfeiture proceedings against the money seized from Weed, mailing notice to Weed who was still imprisoned, to the attorney in the United States who had been appointed to represent Weed at his bond hearing, and to Weed's brother and his attorney. *See id*. No claim was filed. *See id*. The court therefore entered a default judgment in December 1980. *See id*. In July 1981, Weed was released from prison in Germany to stand trial in the United States. *See id*. Following the criminal trial, Weed filed a Rule 60(b) motion to set aside the default judgment. *See id*. The district court denied Weed's Rule 60(b) motion on the ground that Weed lacked a meritorious defense. *See id.* at 912. Reversing the judgment of the district court, the Seventh Circuit held that the combination of "Weed's lack of funds, his imprisonment in a foreign country, the absence of counsel acting on his behalf in the forfeiture proceeding, and Weed's understanding that the Government was going to return half of the seized money . . . support the conclusion that the forty-nine week delay in Weed's filing of a Rule 60(b) motion was reasonable." *Id.* at 913.

The present case is factually distinguishable from *$48,595.00*. In the instant case, Claimant Reyes Torres maintained at least some contact with attorneys in the United States and was able to have individuals inquire into the forfeiture proceedings on his behalf despite his imprisonment. Further, the money in the instant case was not in the name of the individual Claimants, but rather was

(continued...)

-17-

noted that the fact that attorneys were inquiring into the forfeiture proceeding made it clear Claimants had notice of the proceedings. The district court therefore concluded that Claimants were required to do something, even if all they could do was request a continuance. The district court did not abuse its discretion in finding that Claimants were required to take some action upon notice of the forfeiture and that Claimants' Motion to Set Aside was therefore not filed within a reasonable time.

## CONCLUSION

For the foregoing reasons, the judgment of the United States District Court for the District of Colorado is **AFFIRMED**.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge

---

[8](...continued)
in the name of Somateria and Financiera; both of these Claimants received notice by mail and yet neither responded. Finally, in the instant case, Claimants did not have a belief that absent filing a claim, a portion of the money would be returned. Claimants' reliance on *$48,595.00* is thus misplaced.

No. 97-1250, United States v. All Monies from Account No. PO-204, 673, et al.

**HOLLOWAY**, Circuit Judge, concurring and dissenting:

I am in agreement with the majority in its affirmance of the order of May 9, 1997, denying the Claimants' Motion for Reconsideration as to all the claimants except Ms. Dayra Maria Levoyer Jimenez (Levoyer). She argues that the government failed to mail notice to her in accordance with due process requirements and that such failure was not cured by mailing notice to others. Appellants' Brief at 10; Appellants' Reply Brief at 9. I must agree and hence respectfully dissent in part.

### Ms. Levoyer Jimenez

There appears to be no dispute in our record on these facts: The October 15, 1994, affidavit of Mr. Reyes-Torres (Torres), the common law husband of Ms. Levoyer, represented that the Somateria Foundation account was opened with an initial deposit of approximately eight million dollars; this represented a Swiss deposit in May 1985 that was made by Victor Raul Reyes Torres in the amount of five million dollars and interest earned by that initial deposit. App. at 94-95, ¶¶ 13-15. The original five million dollar deposit was made at the request of Torres, and apparently also by Ms. Levoyer. Id. at ¶ 13.

Claimant Torres's affidavit further represented that Torres's accounts advisor had traveled to Europe in September 1989 "to establish the foundations that would ensure that

my wife [Levoyer][1] and my children would be the legal beneficiaries of 80% of the money in the accounts." App. at 94, ¶¶ 13-14 (emphasis added). Ms. Levoyer's affidavit also states that she "was also a beneficiary of the [Somateria] foundation," id. at 104, ¶ 5 (emphasis added), and asks the court to consider "that this money in reality belongs to my children, my husband and myself." Id. at 105, ¶ 7. Thus the evidentiary matter submitted makes an undisputed showing that Ms. Levoyer had a beneficial interest in the funds seized in the instant forfeiture proceeding.

Torres's affidavit states that in May 1990 his wife traveled to Europe to accept her appointment as legal representative of the foundations and that she immediately assigned that responsibility to a Liechtenstein attorney, Dr. Herbert Batliner. App. at 104, ¶ 14. Ms. Levoyer's affidavit stated that she was one of only two people authorized to sign for the Somateria Foundation and was also a beneficiary of the Foundation. Id. at 105, ¶ 5. The authorized signatures record for Somateria Foundation show Ms. Levoyer was authorized to "sign for the firm" according to an August 1990 record. Id. at 1. Torres's affidavit showed further that in July 1992, attorney Batliner's office withdrew from representation of the Somateria Foundation, not informing Torres of this until December 1993. Id. at 96, ¶ 17-2. This withdrawal by attorney Batliner's firm in July 1992 thus preceded by over a year the August 4, 1993, commencement of the instant forfeiture

---

[1]Torres's affidavit of October 15, 1994, referred to Ms. Dayra Maria Levoyer Jimenez as his common law wife who was still in prison. App. at 91-92, ¶ 2.

-2-

proceeding. Id. at 33. Thus I feel we must reject the government's argument that notice to the Liechtenstein firm was effective as to Ms. Levoyer. Notice to former counsel could in no way serve as notice to Ms. Levoyer of the instant proceeding.[2]

The government's Answer Brief, p. 11, accepts the fact that "[a]t the time of the forfeiture at issue here, Claimant Levoyer-Jimenez was incarcerated in a women's prison in Ecuador" (citing Claimant's Brief at 13). Ms. Levoyer's affidavit states that she has been in the women's prison since June 1992. App. at 104, ¶ 1. Moreover, her imprisonment at that location was known to the government before the commencement of the instant forfeiture case on August 4, 1993. Id. at 33, 45-46. This is shown by the government's making service to the prison to reach her with notice of earlier proceedings

_____

[2] To me, it is impermissibly speculative to assume that the law firm would send such instruments or notice of them on to Ms. Levoyer when her name did not appear in the caption of the case or in the certificate of service filed in the case concerning the verified complaint, the Order For Arrest of Property In Rem, and the Notice of Arrest and Procedure. See App. at 33, 44. The certificate of service lists the Somateria Foundation, the Financiera Euro-Americana Corporation and Mr. Jorge Hugo Reyes-Torres, addressed at the Ecuadoran prison, but it makes no mention of Ms. Levoyer. Id. at 44.
　　The majority suggests that the Liechtenstein lawyer served in a dual capacity, see Majority Opinion at n.3, p. 8, and that Ms. Reyes-Torres's "ambiguous" statement on the lawyer's withdrawal said nothing about his relationship with Ms. Levoyer. This suggestion is one never raised by the parties and it was not discussed by the district judge in her oral findings and ruling. She merely said from the bench that it "would appear that there was proper notice given to the proper parties, not only Mr. Reyes, but also the bank, also the two foundations, and the notice indicates that they were sent by registered mail." Tr. May 9, 1997 hearing at 30. I would not base a decision on our serious due process issue on such a suggestion as the majority relies on.

-3-

in other cases. Appellee's Supp. App. at 29, 47 (earlier complaints' certificate of service on "Daira Maria Levoyer-Jimenez," et al).

The affidavit of Ms. Levoyer states that she "never received notice of the seizure of the money in the Somateria account." App. at 105, ¶ 5. In its Answer Brief, p. 11, the government in fact expressly admits that it "did not mail actual notice to Claimant Levoyer-Jimenez," relying only on its claim that it was sufficient to mail copies to Somateria, Financiera, and Mr. Reyes-Torres and to publish notice in the Denver Post on August 11, 15 and 18 and September 1.[3]

Why the government mailed notice to Ms. Levoyer of the earlier forfeiture proceedings (Appellee's Supp. App. at 27, 29, 45, 47) on November 27, 1992, and on January 19, 1993, but failed to do so when the instant forfeiture case was filed on August 4, 1993, is nowhere explained. The government has not argued that when this forfeiture was commenced, it was ignorant of any claim by Ms. Levoyer to the property in question here and instead belabors other points such as its claim that notice to the foundations was sufficient to cover Ms. Levoyer's interest. Appellee's Answer Brief at 11.

The core of the undisputed facts here brings to bear basic due process principles. As it did when it notified Ms. Levoyer less than a year earlier about other forfeiture

---

[3]The government enumerates the Verified Complaint, the Order for Arrest of Property In Rem, and the Warrant for Arrest of Property In Rem as having been sent by registered mail to Somateria, to Financiera and to Mr. Reyes-Torres, but makes no mention of Ms. Levoyer. Id. at 4.

proceedings (see Appellee's Supp. App. at 27, 29, 45, 47), the government should have

mailed notice to her as the Supreme Court instructed in <u>Mullane v. Central Hanover Bank</u>

<u>& Trust Co.</u>, 339 U.S. 306 (1950). After rejecting constitutional objections to published

notice to beneficiaries whose interests or addresses are unknown, the Court held:

> As to <u>known present beneficiaries of known place of residence</u>,
> however, notice by publication stands on a different footing. Exceptions in
> the name of necessity do not sweep away the rule that within the limits of
> practicality notice must be such as is reasonably calculated to reach
> interested parties. <u>Where the names and post office addresses of those</u>
> <u>affected by a proceeding are at hand, the reasons disappear for resort to</u>
> <u>means less likely than the mails to apprise them of its pendency.</u>

339 U.S. at 318 (emphasis added). As it did by mailing notice of the instant forfeiture

proceeding to Mr. Torres at his place of imprisonment, the government should have given

notice by mail to Ms. Levoyer at the women's prison to satisfy the "elementary and

fundamental requirement of due process . . . ." <u>Id</u>. at 314; <u>see</u> <u>also</u> <u>Mennonite Board of</u>

<u>Missions v. Adams</u>, 462 U.S. 791, 795 (1983).

In <u>United States v. Rodgers</u>, 108 F.3d 1247, 1251 (10th Cir. 1997), we recently

applied the due process requirement discussed in <u>Mennonite</u>. There we directed that a

DEA administrative forfeiture be vacated where the DEA failed to mail notice of the

seizure of property to an owner at a third residence he maintained. This residence, we

found, was the most reasonable address to which the notice could have been mailed. <u>Id</u>.

at 1252. We charged the DEA with information about Rodgers provided in local

authorities' seizure records. Actually, this is a stronger case for Ms. Levoyer in the sense

that her place of imprisonment was known, while we recognized that Rodgers' fugitive status was a factor as to reasonable notification steps. We held it was nevertheless unreasonable not to attempt notice to Rodgers at the residence he had been using. Id. at 1253. Finally in Rodgers we noted that the government did not dispute Rodgers' claim that he did not have actual notice; that is the case here as to Ms. Levoyer who denied getting actual notice. We have noted earlier that "[w]hen the government is aware that an interested party is incarcerated, due process requires the government to make an attempt to serve him with notice in prison." United States v. Clark, 84 F.3d 378, 381 (10th Cir. 1996). That was admittedly not done here.

The cases discussed above by me focus on the due process requirement. However, the forfeiture statute itself mandates that "[w]ritten notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a)(4) (emphasis added).[4] We are instructed clearly that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional pre-condition to a proceeding which will adversely affect . . . property interests of any party . . .. if its name and address are reasonably ascertainable." Mennonite Board of Missions v. Adams, 462 U.S. at 800 (emphasis in original). For reasons given above, I feel there is no question about Ms. Levoyer being a "known

_____

[4]This provision is made applicable to forfeitures under the drug laws by 21 U.S.C. § 881(d).

-6-

present beneficiar[y] of known place of residence," within <u>Mullane</u>, 389 U.S. at 318. The government does not dispute such knowledge on its part.

I cannot conclude that mail addressed to a foundation through a legal firm in Liechtenstein that formerly represented Somateria was as certain to ensure actual notice to Ms. Levoyer as mailing to her directly where she was known to be in custody. The doubtful effectiveness of such notice reaching Ms. Levoyer is apparent particularly because the caption and certificates of service for the papers sent out by the government on the instant forfeiture case did not carry Ms. Levoyer's name. See App. at 32, 44. Since the fundamental demand of due process was not observed, the forfeiture judgment was void as to Ms. Levoyer. And "[i]f voidness is found, relief is not a discretionary matter; it is mandatory." <u>V.T.A., Inc. v. AIRCO, Inc.</u>, 597 F.2d 220, 224 n.8 (10th Cir. 1979) (citing 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil2d § 2862). Moreover, relief under Rule 60(b)(4) "is not subject to any time limitation." <u>V.T.A., Inc. v. AIRCO, Inc.</u>, 597 F.2d at 224 & n.9.

<u>Jorge Hugo Reyes-Torres and the Foundations</u>

With respect to Mr. Torres and the Somateria and Financiera Foundations, I agree with the affirmance of the denial of the motion to set aside the default and default judgment. I find no abuse of discretion in the ruling that as to these parties, the motion to set aside the default was untimely.

Accordingly, I concur in the result of the majority's order and judgment upholding the rulings against Mr. Torres and the Foundations. However, for the reasons set out earlier, I respectfully dissent with respect to the ruling against Ms. Dayra Maria Levoyer Jimenez.